[No. A052639. First Dist., Div. Five. Nov. 22, 1991.]

RAUL JIMENEZ, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and INTERSTATE
BRANDS CORPORATION, Respondents.

COUNSEL

Boxer, Elkind & Gerson, Michael G. Gerson, Smith, Wright & Peterson and Stephen P. Angelides for Petitioner.

Airola, Williams, Otis & Paterno and Barry J. Williams as Amici Curiae on behalf of Petitioner.

Liebman, Reiner & McNeil and Joseph H. Leonard for Respondents.

Hanna, Brophy, MacLean & Jensen, Bennett M. Lieber and Richard H. Jordan as Amici Curiae on behalf of Respondents.

OPINION

KING, J.—In this case we hold that the "maintenance allowance" benefit provision created by workers' compensation reform legislation does not apply retroactively to injuries which occurred before its effective date.

BACKGROUND

*Temporary disability indemnity (TD).* Workers who are partially or totally temporarily disabled due to an industrial injury receive "temporary disability indemnity" (TD or medical TD) until they recover or become permanently disabled. (Lab. Code, § 4650;[1] 1 Herlick, Cal. Workers' Comp. Law Practice (4th ed. 1990) § 6.1, p. 6-2.) TD is computed at two-thirds of average weekly earnings, with a statutory maximum depending on the date of the injury. (§§ 4653-4658; Herlick, *op. cit. supra*, §§ 5.18, 5.23, pp. 5-14, 5-23.)

For injuries occurring between 1984 and the end of 1989, the maximum TD benefit was $224 a week. For injuries occurring in 1990, the maximum TD benefit was $266 a week. For injuries occurring on or after January 1, 1991, the maximum TD benefit is $336 a week. (§ 4453, subd. (a); 1 Herlick, *op. cit. supra*, § 5.23, pp. 5-23 - 5-24.)

*Vocational rehabilitation (VR).* The law encourages the injured worker to engage in rehabilitation. In fact the term "compensation" is now defined to include vocational rehabilitation benefits. (§ 3207.)

Prior to January 1, 1990, a qualified injured worker who enrolled in a rehabilitation program continued to receive TD, as well as benefits such as

---

[1]All further statutory references are to the Labor Code.

additional living expenses necessitated by the VR program. (Former § 139.5, subd. (c), Stats. 1982, ch. 922, § 2, p. 3364.) Temporary disability indemnity received in conjunction with a vocational rehabilitation program is sometimes referred to as "VRTD" to distinguish it from medical TD received outside a rehabilitation program.

On or after January 1, 1990, an injured worker who is medically eligible for VR and chooses to enroll in a VR program continues to receive TD as well as additional VR benefits. However, when the worker's medical condition becomes permanent and stationary, the worker is no longer eligible for TD. If VR is to continue, payment of VRTD ceases and payment of the new benefit called "maintenance allowance" begins. (§ 139.5, subd. (c); Legislative Note, *Tackling Workers' Compensation in California: The Margolin-Bill Greene Workers' Compensation Reform Act of 1989* (1990) 21 Pacific L.J. 853, 874.)

The amount of the maintenance allowance, like TD, is fixed at two-thirds of weekly earnings at the date of the injury. But maintenance allowance may have a lower maximum. It is payable in the amount the worker "would have received as continuing temporary disability indemnity, but not more than . . . $246 . . . a week for injuries occurring on or after January 1, 1990." (§ 139.5, subd. (d)(1).)[2]

Section 4661.5 provides that if a TD payment is made "two years or more from the date of the injury," the amount of the payment shall be computed in accordance with the TD provision of section 4553 in effect on the date of payment "unless computing the payment on this basis produces a lower payment because of a reduction in the minimum average weekly earnings applicable under Section 4453." (§ 4661.5.)

## FACTS AND PROCEDURAL HISTORY

Raul Jimenez sustained an industrial injury to his lower back on February 27, 1987. He received TD for four months at the then maximum rate of $224 a week. (§ 4453, subd. (a)(2).) On August 29, 1988, Jimenez's medical-legal examiner reported that the low back condition was permanent, stationary and ratable. The employer's medical-legal examiner agreed. The workers' compensation judge (WCJ) approved a compromise and release on November 30, 1988.

Jiminez requested rehabilitation benefits on April 10, 1989, and the rehabilitation consultant found he was entitled to TD at the legal rate

---

[2]When the maintenance allowance takes effect the employee has the option of supplementing it with an additional amount drawn from permanent disability indemnity due or payable which will provide a maintenance allowance equal to two-thirds of average weekly wages at the date of injury and subject to limits contained in section 4453, subdivision (a), and section 4661.5. (§ 139.5, subd. (d)(2).)

commencing on the date of request. (See Cal. Code Regs., tit. 8, § 10009.) His employer appealed. While the case was pending, the Legislature enacted the Margolin-Bill Greene Workers' Compensation Reform Act of 1989, with provisions effective January 1, 1990, January 1, 1991, and January 1, 1992. (Stats. 1989, ch. 892.) An amendment to section 4453 increased the maximum TD rate from $224 a week to $266 a week for 1990 injuries and to $336 a week for 1991 injuries.

The WCJ found, among other things, that Jiminez was earning at least $435 at the time of the injury and was entitled to VRTD "payable at a rate of at least $266.00 a week [the 1990 rate], commencing 4/10/89 continuing [through] 5/11/89 to the present and continuing." (§§ 4453, subd. (a)(3); 4461.5.)

The employer sought reconsideration arguing that the WCJ had used an inappropriate measure of VR rates. The WCJ recommended denial of reconsideration, stating that the $266 rate was correct and that the $246 rate, which is the maximum allowed for a maintenance allowance under section 139.5, subdivision (d)(1), applied to injuries suffered after January 1, 1990. The Workers' Compensation Appeals Board (the Board) disagreed and granted reconsideration.

The Board held that where, as here, the worker's medical condition has become permanent and stationary, and VRTD is payable after January 1, 1990, and VRTD is paid two years or more from the date of the injury, the correct rate is $246 (the maintenance allowance ceiling). In other words, the Board applied the newly created "maintenance allowance" retroactively to an injury occurring in 1987.

The Legislature clearly stated that the $246 maintenance allowance was prospective only: "Unless otherwise specified, Assembly Bill 276 of the 1989-90 Regular Session [Statutes 1989, chapter 892] shall apply only to injuries on or after January 1, 1990." (Stats. 1989, ch. 893, § 6.) Jimenez argued to the Board that the maintenance allowance established in the revised section 139.5 applied only to injuries occurring after January 1, 1990. The Board attempted several approaches in its effort to circumvent the Legislature's unambiguous denial of retroactivity.

For example the Board stated it made "no sense" to follow Jimenez's theory and create an "unjustifiable disparity in compensation among injured workers." The Board cited no authority for its position and did not mention that the workers' compensation system is replete with examples of disparity between workers based on many factors, especially the date of injury. (See,

e.g., 1 Herlick, *op. cit., supra*, ch. 5, "Earnings—Compensation Rate;" ch. 6, "Temporary Disability Benefits;" ch. 7, "Permanent Disability Benefits.")

The Board was still faced with the policy requiring liberal interpretation of workers' compensation laws in favor of the well-being of the injured worker. However, the Board said its interpretation of the intent of the Legislature required the result it reached. The Board stated, "In this instance the intent of the 1989 reform legislation, as expressed in the amendment to Section 139.5, was to increase the amount of vocational rehabilitation indemnity payable to the injured worker, but to limit that increase to $246.00 a week once his or her medical condition is permanent and stationary. We see no compelling reason why workers injured prior to this legislation should receive the benefit of these amendments but remain exempt from their limitations."

Accordingly, the Board ordered Jimenez was only entitled to VR at a rate of $246 a week beginning April 10, 1989, and continuing through January 11, 1990, and indefinitely thereafter.

## DISCUSSION

The issue before us is whether Jimenez, injured prior to 1990 and qualifying under the two-year provision of section 4661.5 for TD payments at current rates, should receive the maximum TD payment of $266 a week in 1990 and $336 a week thereafter, or the new lower maintenance allowance of $246. Contrary to the Board, we hold Jimenez should receive the higher rate; he is entitled to the benefit of section 4661.5; the new lower maintenance allowance applies prospectively only.

The Board's opinion is the product of convoluted and strained reasoning, apparently aimed at arriving at its intended result. An analysis of the statutes provides a clear and logical answer to the issue before us. "It is an established principle of statutory interpretation that where the words of a statute are clear and unambiguous, its plain language should be followed. [Citations.]" (*Hofmeister v. Workers' Comp. Appeals Bd.* (1984) 156 Cal.App.3d 848, 852 [203 Cal.Rptr. 100].)

The question before us is answered unambiguously in section 139.5, subdivision (d)(1): "(d) The amount of the maintenance allowance . . . shall be two-thirds of the employee's average weekly earnings at the date of injury payable as follows: (1) The amount the employee would have received as continuing temporary disability indemnity, but not more than two hundred forty-six dollars ($246) a week for injuries occurring on or after

January 1, 1990." The first clause of subsection (1), which precedes the comma, defines the maintenance allowance for all those injured before January 1, 1990, as equivalent to the amount they would have received as VRTD or TD. The second clause of subsection (1), after the comma, limits to the $246 payment only those injured on or after January 1, 1990. Thus section 139.5 itself not only creates the maintenance allowance but also expressly imposes its $246 limitation prospectively only. This is consistent with the Legislature's general provision that the Margolin-Bill Greene Act would apply only to injuries on or after January 1, 1990. (Stats. 1989, ch. 893, § 6.)[3]

Commentators note no ambiguity. For example, Hanna observes, "The maintenance allowance is two thirds of the employee's average weekly earnings at the time of injury." A footnote at this point reads: "For injuries occurring on or after January 1, 1990, the amount payable is the amount the injured worker would have received as continuing temporary disability not to exceed $246 per week." (1A Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed. 1990) § 19.05[2], p. 19-44, fn. 22.3 and accompanying text.) The Pacific Law Journal reported that under the new legislation "a qualified worker who chooses VR receives a maintenance allowance equal to two-thirds of the employee's average weekly earnings at the date of injury. For injuries occurring on or after January 1, 1990, the maximum maintenance allowance is $246." (21 Pacific L.J., *op. cit. supra*, at p. 874, fns. omitted.)

Before January 1, 1990, maintenance allowance did not exist, and a worker in a VR program simply "continued" to receive TD. (Former § 139.5, subd. (c), as amended, Stats. 1982, ch. 922, § 2, p. 3364.) The law at the time of Jimenez's 1987 injury provided for TD, and not for maintenance allowance, during VR. As a general rule the law at the time of the injury governs rights and liabilities arising out of the injury. (*Hofmeister, supra*, 156 Cal.App.3d at pp. 852-853.) In light of the foregoing analysis of the plain meaning of the statute, Jimenez was entitled to receive TD, not a maintenance allowance, while engaged in a VR program. The level of his TD benefit is properly determined under section 4661.5. (§ 4453, subd. (d); *Hofmeister, supra*, 156 Cal.App.3d at pp. 851-854.) Section 4661.5 protects his right to receive TD based on the statutory maximum on the date of payment. Accordingly, Jimenez has a right to receive maximum payments of $266 for 1990, and $336 for 1991 and after. (§§ 4453, subd. (a)(3), & (4); 4661.5.)

---

[3]Jimenez submitted to us a report on legislative intent prepared by William Keller of Legislative Intent Service. Respondent argues that it is not properly before us. Recourse to the report is unnecessary; we need not reach the question of whether it is properly before us.

Even if these statutes were ambiguous, the judicial rule of liberal construction would mandate that the Labor Code, and section 139.5 in particular, be construed in favor of granting benefits to employees. (§ 3202; *Webb* v. *Workers' Comp. Appeals Bd.* (1980) 28 Cal.3d 621, 627, fn. 3 [170 Cal.Rptr. 32, 620 P.2d 618].) The Board merely paid lip service to this rule.

## CONCLUSION

It may be argued the position taken by the Board reflects a policy preferable to that reflected in the WCJ's opinion and this decision. It may be, for example, that the result reached here will provide less incentive for some workers to enter VR programs promptly. However, the Legislature has spoken clearly and unambiguously; disputes about the merits of this policy are decided by the Legislature, not the courts.

■ "It is an established canon of interpretation that statutes are not to be given a retrospective operation unless it is clearly made to appear that such was the legislative intent. [Citations.]" (*Aetna Cas. & Surety Co.* v. *Ind. Acc. Com.* (*Charlesworth*) (1947) 30 Cal.2d 388, 393 [182 P.2d 159].) Here the Legislature has made clear that the Margolin-Bill Greene Workers' Compensation Reform Act is to be given prospective application only. The Board erred.

The decision of the Board is annulled. The matter is remanded to the Board for further proceedings consistent with this opinion.

Low, P. J., and Haning, J., concurred.