[No. D029310. Fourth Dist., Div. One. June 24, 1998.]

DOUGLAS EDGAR, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and CALIFORNIA
HIGHWAY PATROL, Respondents.

2

COUNSEL

Scott A. O'Mara and Adriene J. Clark for Petitioner.

Krimen, Da Silva, Daneri, Bloom & Landsiedel, Robert A. La Porta, Louis Harris, Richard A. Krimen and Robert W. Daneri for Respondents.

OPINION

**NARES, J.**— Petitioner Douglas Edgar (Edgar) seeks review of a decision of respondent Workers' Compensation Appeals Board (WCAB). Edgar is an industrially disabled California Highway Patrol (CHP) officer who, after his medical condition became permanent and stationary, participated in vocational rehabilitation for approximately three months while CHP was paying him full leave of absence salary under former section 4800 of the Labor Code.[1]

The question presented in this proceeding is whether CHP is permitted to (1) take a credit in the weekly sum of $246 (the maximum weekly vocational rehabilitation maintenance allowance that CHP may be obligated to provide Edgar during vocational rehabilitation under § 139.5, subd. (d)) based on an equivalent portion of the full leave of absence salary benefit CHP paid to Edgar under former section 4800 during his vocational rehabilitation; and (2) apply that credit (without reducing Edgar's salary under former § 4800) against the $16,000 cap on vocational rehabilitation services (VR cap) mandated by subdivision (c) of section 139.5. Stated more simply, the issue is whether CHP is permitted to apply a $246 per week credit against the $16,000 VR cap when it pays leave of absence salary under former section 4800 to an industrially disabled CHP officer who participates in vocational rehabilitation after his or her medical condition has become permanent and stationary.

WCAB ruled that, for purposes of determining the maximum benefits that CHP is obligated to provide Edgar for vocational rehabilitation services under the VR cap, a portion of the salary it paid to Edgar under former section 4800 during his participation in vocational rehabilitation (specifically, the weekly sum of $246) is deemed the equivalent of vocational rehabilitation maintenance allowance (VRMA) under section 139.5, and is thus included in calculating the vocational rehabilitation services CHP has provided to Edgar under the VR cap.

Edgar seeks review of WCAB's decision, contending WCAB erred in construing a portion of his leave of absence salary payments under former

---

[1]Subsequent statutory references are to the Labor Code unless otherwise specified.

section 4800 to be VRMA for purposes of determining the vocational rehabilitation services benefits CHP must provide him under the VR cap.

Viewing former section 4800 and other related statutes in light of established rules of statutory construction, we conclude that salary benefits paid by CHP under former section 4800 to an industrially injured CHP officer during the officer's participation in vocational rehabilitation are in lieu of temporary disability payments, but not in lieu of VRMA. We further conclude the Legislature did not intend that a portion of leave of absence salary paid under former section 4800, in the maximum weekly amount of $246 as provided in subdivision (c) of section 139.5, be included in calculating vocational rehabilitation services benefits CHP must provide to an industrially injured CHP officer under the $16,000 VR cap, and thus CHP is not entitled to apply a $246 per week credit against the VR cap during the period when the disabled officer receives leave of absence salary under former section 4800 while participating in vocational rehabilitation.

### FACTS AND PROCEDURAL BACKGROUND

Petitioner Edgar sustained industrial injuries to his back, left clavicle, heart and lungs as a result of two incidents in February 1994, as well as a cumulative industrial injury sustained during the period of 1978 to February 1994, while employed as a state traffic officer for respondent CHP, which was legally uninsured as to workers' compensation liability. The State Compensation Insurance Fund (SCIF) is CHP's claims adjusting agency.

Edgar was placed on leave of absence with one year of full salary under former section 4800,[2] which he received between February 19, 1994, and approximately July 5, 1995.[3]

In August 1994, Edgar's medical condition became permanent and stationary, and he was determined to be eligible for vocational rehabilitation under section 139.5. At his request, Edgar participated in vocational rehabilitation during the three-month period from January 4, 1995, through April 5, 1995, during which time he continued on leave of absence status with full salary under former section 4800.

---

[2]In 1994, former section 4800 provided that members of the CHP (among others) disabled as the result of an industrial injury were entitled to "leave of absence while so disabled without loss of salary, in lieu of disability payments under this chapter [i.e., division 4, part 2, chapter 2], for a period of not exceeding one year."

[3]Edgar received the section 4800 one-year salary continuation for the three-month period beginning February 19, 1994, through May 15, 1994, and for the nine-month period beginning October 1, 1994, through July 5, 1995.

PROCEDURAL BACKGROUND

A dispute arose when SCIF, acting on behalf of CHP, claimed "credit" for $246 per week as VRMA payments toward the $16,000 VR cap payable under section 139.5. Edgar opposed SCIF's request for such credit, maintaining that the full-salary payments he was receiving under section 4800 were "in lieu of" temporary disability indemnity payments. Edgar also maintained that, under the liberal construction rule set forth in section 3202,[4] no portion of his salary payments under former section 4800 should be considered VRMA within the meaning of section 139.5.

In March 1995, Edgar filed a request for dispute resolution. In June 1995, the rehabilitation unit issued its determination. Applying the section 3202 liberal construction rule, and noting that no Labor Code provision or administrative rule expressly allowed SCIF the right to claim a weekly credit toward the $16,000 VR cap from the leave of absence salary payments received by Edgar under former section 4800, the rehabilitation unit found that SCIF was not entitled to such credit. CHP, through SCIF, filed a timely appeal from the determination of the rehabilitation unit.

In December 1996, an appeal hearing was held before the WCAB. In March 1997, the workers' compensation administrative law judge (WCJ) issued his decision, joint findings and order upholding the determination of the rehabilitation unit. Noting that an employee entitled to receive permanent disability indemnity is also entitled to receive VRMA, the WCJ stated that the Legislature, in enacting former section 4800, intended that members of the CHP "receive the salary continuation benefit without reduction for a full year in lieu of any disability benefits." The WCJ also stated "[i]t is not conceivable [the Legislature] intended to reduce these benefits in any fashion because the worker was receiving VRMA instead of permanent disability."

CHP, through SCIF, filed a timely petition for reconsideration on three grounds: (1) the Legislature intentionally made distinctions as to the particular kinds of benefits provided to different public employees who regularly put themselves in harm's way; (2) the Legislature did not intend that a CHP member's salary benefit under former section 4800 be "in lieu" of VRMA; and (3) CHP and SCIF were thus entitled to credit a portion of the former section 4800 benefit against the section 139.5 VR cap, without reducing Edgar's benefits under former section 4800. The WCJ issued a report

---

[4]Section 3202 provides: "This division [i.e., division 4] and Division 5 (commencing with Section 6300) shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment."

recommending that the petition for reconsideration be denied. In June 1997, WCAB rejected this recommendation and granted reconsideration.

In July 1997, WCAB issued its opinion and decision after reconsideration, rescinding the decision of the WCJ. WCAB found that CHP, in calculating the vocational rehabilitation benefits it was required to provide to Edgar, was entitled to include the weekly sum of $246 for the weeks Edgar was both receiving full leave of absence salary under former section 4800, and participating in vocational rehabilitation. WCAB concluded that CHP paid a portion of the salary benefits to Edgar in lieu of VRMA, and thus a portion of the salary "must be included in the amounts used to calculate the cap on vocational rehabilitation benefits." Edgar's timely petition for review of WCAB's opinion and decision after reconsideration followed.

STANDARD OF REVIEW

WCAB rendered its decision solely upon the basis of its interpretation of former section 4800, section 139.5, other related statutes and case law applied to undisputed facts. ■ As this court stated in *Rudd* v. *California Casualty Gen. Ins. Co.* (1990) 219 Cal.App.3d 948, 951-952 [268 Cal.Rptr. 624], "[i]t is well settled that the interpretation and application of a statutory scheme to an undisputed set of facts is a question of law [citation] which is subject to de novo review on appeal. [Citation.]"

■ The applicable canons of statutory construction which guide our analysis in this matter are also well settled. "The fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citations.]" (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) In determining that intent, we first examine the words of the statute itself. (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856].) Under the so-called "plain meaning" rule, courts seek to give the words employed by the Legislature their usual and ordinary meaning. (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) If the language of the statute is clear and unambiguous, there is no need for construction. (*Ibid.*)

However, the "plain meaning" rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose. (*Lungren* v. *Deukmejian, supra,* 45 Cal.3d at p. 735.) If the terms of the statute provide no definitive answer, then courts may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative

history. (*People* v. *Coronado* (1995) 12 Cal.4th 145, 151 [48 Cal.Rptr.2d 77, 906 P.2d 1232].) " 'We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]" (*Ibid.*) The legislative purpose will not be sacrificed to a literal construction of any part of the statute. (*Select Base Materials* v. *Board of Equal.*, *supra*, 51 Cal.2d at p. 645.)

Finally, "[w]hile the ultimate interpretation of a statute is an exercise of the judicial power [citation], when an administrative agency is charged with enforcing a particular statute, its interpretation of the statute will be accorded great respect by the courts 'and will be followed if not clearly erroneous.' " (*Judson Steel Corp.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 668-669 [150 Cal.Rptr. 250, 586 P.2d 564], quoting *Bodinson Mfg. Co.* v. *California E. Com.* (1941) 17 Cal.2d 321, 325-326 [109 P.2d 935].)

DISCUSSION

I

*Issue and Background*

We decide here whether CHP, when it pays full-salary, leave of absence benefits under former section 4800 to an industrially injured CHP officer participating in vocational rehabilitation after his or her medical condition has become permanent and stationary, is permitted to (1) treat a portion of that salary benefit as the equivalent of VRMA within the meaning of section 139.5, in an amount not to exceed the maximum weekly VRMA amount of $246 as provided by subdivision (d)(1) of section 139.5; and (2) include that sum (without reducing the salary benefit under former § 4800) as a "credit" in calculating the vocational rehabilitation services benefits that CHP must provide to the officer during vocational rehabilitation under the $16,000 cap on such benefits provided by subdivision (c) of section 139.5. There is no express legislative directive by which to resolve this issue. In order to place this issue in the proper context for purposes of statutory construction, we begin our analysis with a review of the basic workers' compensation scheme, the history of vocational rehabilitation programs for the industrially injured employee in California, and the pertinent compensation benefits available to injured CHP officers.

*The Basic Compensation Scheme*

The purpose of the California Workers' Compensation Act is "to provide subsistence to employees unable to work due to industrial injuries

in order to promote their rehabilitation and speedy return to gainful employment, not to indemnify them for all consequences of their injuries." (1 Hanna, Cal. Law of Employee Injuries & Workers' Compensation (rev. 2d ed. 1997) § 4.01[3], p. 4-16, fn. omitted (hereafter Hanna).) Compensation is intended to prevent injured employees and their dependents from becoming public charges during the period the employees are disabled from work. (*Universal City Studios, Inc.* v. *Workers' Comp. Appeals Bd.* (1979) 99 Cal.App.3d 647, 659-660 [160 Cal.Rptr. 597].)

An employer must provide an industrially injured employee with any "[m]edical, surgical, chiropractic, and hospital treatment . . . that is reasonably required to cure or relieve from the effects of the injury . . . ." (§ 4600.) Medical treatment and disability indemnity are separate and distinct elements of compensation. (*Nickelsberg* v. *Workers' Comp. Appeals Bd.* (1991) 54 Cal.3d 288, 294 [285 Cal.Rptr. 86, 814 P.2d 1328].)

A. *Disability indemnity*

■ While there is no statutory definition of temporary disability, one commentator has defined this condition as "an impairment of bodily function, or a physical incapacity, that is reasonably expected to be cured or materially improved with proper medical care." (1 Hanna, *supra*, § 7.01[1], p. 7-4, fn. omitted.) Permanent disability is the disability that remains after an injured employee's condition becomes permanent and stationary. (*Id.*, § 8.01, p. 8-5.) "For injuries occurring on or after January 1, 1991, a 'disability is considered permanent after the employee has reached maximum medical improvement or his or her condition has been stationary for a reasonable period of time.' It does not mean total inability to work, but is an impairment of earning power caused by a mental or physical condition." (*Ibid.*, fns. omitted.)

■ The Workers' Compensation Act provides for temporary and permanent disability indemnity. (§ 4650 et seq.) The court in *Ritchie* v. *Workers' Comp. Appeals Bd.* (1994) 24 Cal.App.4th 1174, 1179-1180 [29 Cal.Rptr.2d 722] (*Ritchie*), explained the distinction between *temporary* disability indemnity and *permanent* disability indemnity:

"Temporary disability indemnity (termed TD or medical TD) is the basic benefit payable to a worker who is temporarily disabled due to industrial injury; it serves as a substitute for wages lost by the employee during the time he or she is incapacitated from working. [Citations.] Medical TD benefits cease when the employee returns to work or is deemed medically able to return to work, or when the employee's medical condition becomes permanent and stationary. [Citation.]

"Once the employee's condition has become permanent and stationary, he or she is entitled to permanent disability indemnity; these benefits are intended as reimbursement for the employee's impaired future earning capacity or decreased ability to compete in the open labor market. [Citation.] Because an injured worker cannot be temporarily and permanently disabled at the same time, permanent disability payments do not begin until medical TD payments cease."

TD payments are computed at two-thirds of average weekly earnings, with a statutory maximum depending on the date of the injury. (*Jimenez* v. *Workers' Comp. Appeals Bd.* (1991) 1 Cal.App.4th 61, 63 [1 Cal.Rptr.2d 660]; §§ 4653-4658.) "Permanent disability benefits are in addition to any temporary disability benefits that may be paid or owing." (1 Hanna, *supra*, § 8.01, p. 8-5, fn. omitted; § 4661.)

## B.  *Vocational rehabilitation*

■   In California, an employer is required to furnish rehabilitation services to an industrially injured employee, but the employee's acceptance of those services is voluntary. (2 Hanna, *supra*, § 35.02, p. 35-9.) The purpose of rehabilitation under the workers' compensation scheme is to restore an injured employee to suitable employment. (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 232 [110 Cal.Rptr. 144, 514 P.2d 1224].)

"Rehabilitation has been defined as '[1] those medical and paramedical techniques designed to get a disabled worker from "the bed to the job" . . . and [2] vocational training.' " (*Moyer* v. *Workmens' Comp. Appeals Bd.*, *supra*, 10 Cal.3d at p. 232, quoting the Rep. of the Workmen's Compensation Study Com. (Apr. 1965) ch. IX, Rehabilitation, p. 209, fn. omitted.)

Rehabilitation thus involves both physical and vocational restoration. (2 Hanna, *supra*, § 35.01, p. 35-8.) "In the case of a worker who will be unable to return to his or her former job due to industrial injury, [vocational] rehabilitation benefits consist of the costs of vocational training, counseling, and guidance, as well as certain additional living expenses, all for the purpose of preparing and adapting the worker to perform a new job or trade and enter a new work environment. [Citation.]" (*Ritchie, supra*, 24 Cal.App.4th at p. 1180.)

*Section 139.5 and VRMA*

Most of the statutory provisions applicable to the present writ of review proceeding with respect to vocational rehabilitation are set forth in section

139.5. Enacted in 1965, section 139.5 authorized the establishment of a rehabilitation unit within the Medical Bureau of the Division of Industrial Accidents (now Division of Workers' Compensation).[5] (*Ritchie, supra,* 24 Cal.App.4th at p. 1181.) This statute was enacted for the purpose of encouraging employees to enroll in rehabilitation. (*Ibid.*) As originally written, section 139.5 made initiation of a rehabilitation program by the employer voluntary. (2 Hanna, *supra,* § 35.03[1], p. 35-11.)

Effective January 1, 1975, section 139.5 was amended to (among other things) (1) make rehabilitation programs mandatory for employers and their compensation carriers, and (2) expressly authorize the continuation of temporary disability indemnity during rehabilitation. (*Webb* v. *Workers'. Comp. Appeals Bd.* (1980) 28 Cal.3d 621, 625, fn. 2 [170 Cal.Rptr. 32, 620 P.2d 618]; 2 Hanna, *supra,* § 35.03[1], p. 35-11.) Such temporary disability benefits received by an injured employee who is participating in a VR program are often referred to as "VRTD" to distinguish them from TD received outside the VR program. (*Jimenez* v. *Workers' Comp. Appeals Bd., supra,* 1 Cal.App.4th at p. 64.) The amended statute provided (and still provides) for these VRTD payments to a medically eligible employee during his or her participation in a VR program, in addition to the payment to him or her of any additional living expenses necessitated by the VR program, and all reasonable and necessary vocational training. (2 Hanna, *supra,* § 35.03[1], p. 35-11; § 139.5, subd. (c).)

"The purpose underlying the Legislature's 1975 modification of section 139.5 to extend temporary disability benefits during rehabilitation was two-fold: (1) to encourage employees to enroll in rehabilitation training by maintaining financial support during the rehabilitative process; and (2) to motivate employers to make rehabilitation available promptly and thereby enable the employee to reenter the work force as soon as practicable. [Citation.]" (*Ritchie, supra,* 24 Cal.App.4th at p. 1181.) The employee was (and is) still not required to participate in a VR program. (*Ibid.*)

In 1989, the Legislature amended section 139.5, subdivision (c), and changed a number of requirements regarding VR in workers' compensation cases involving injuries occurring on or after January 1, 1990. (2 Hanna, *supra,* § 35.03[3], p. 35-13.) The statute, as amended, provides for the payment to an eligible employee of a "maintenance allowance" benefit (VRMA), in addition to living expenses necessitated by the VR services and all reasonable and necessary vocational training. (*Id.* § 35.12, p. 35-27.) VRMA payments commence when the industrially disabled employee participates in VR and his or her medical condition becomes permanent and

---

[5]Section 139.5, added by Statutes 1965, chapter 1513, section 44.5, page 3565, operative January 15, 1966.

stationary.[6] (*Ritchie, supra,* 24 Cal.App.4th at p. 1180) VRMA is paid in lieu of continued TD indemnity.[7] (*Ritchie, supra,* at p. 1182.) "The acronym 'VRMA' is usually used to refer to section 139.5's 'maintenance allowance' in order to distinguish it from VRTD." (*Ibid.*)

"The amount of the maintenance allowance, like TD, is fixed at two-thirds of weekly earnings at the date of the injury. But maintenance allowance may have a lower maximum. It is payable in the amount the worker 'would have received as continuing temporary disability indemnity, but not more than . . . \$246 . . . a week for injuries occurring on or after January 1, 1990.' (§ 139.5, subd. (d)(1).)"[8] (*Jimenez* v. *Workers' Comp. Appeals Bd., supra,* 1 Cal.App.4th at p. 64.)

In 1993, the Legislature again amended section 139.5 and changed a number of requirements regarding VR in workers' compensation cases involving injuries occurring on or after January 1, 1994. (2 Hanna, *supra,* § 35.03[3], p. 35-13.) Of particular relevance here, the Legislature put a \$16,000 "cap" or limit (VR cap) on the cost of vocational rehabilitation services, including but not limited to VRMA, to be provided at the expense of the employer to eligible employees who elect to participate in a VR program.[9]

C. *Industrially injured CHP officers*

As a result of the injuries he suffered in February 1994 while employed as a CHP traffic officer, Edgar elected to take a leave of absence with full

---

[6]Subdivision (c) of section 139.5 currently provides in part: "When an employee is determined to be medically eligible and chooses to participate in a vocational rehabilitation program, he or she shall continue to receive temporary disability indemnity payments only until his or her medical condition becomes permanent and stationary and, thereafter, may receive a maintenance allowance. Rehabilitation maintenance allowance payments shall begin after the employee's medical condition becomes permanent and stationary, upon a request for vocational rehabilitation services."

[7]Section 139.5, subdivision (d)(2), provides in part that "[i]n no event shall temporary disability indemnity and maintenance allowance be payable concurrently."

[8]Section 139.5, subdivision (d)(1), provides in part: "(d) The amount of the maintenance allowance due under subdivision (c) shall be two-thirds of the employee's average weekly earnings at the date of injury payable as follows: [¶] (1) The amount the employee would have received as continuing temporary disability indemnity, but not more than two hundred forty-six dollars (\$246) a week for injuries occurring on or after January 1, 1990."

[9]As amended, section 139.5, subdivision (c), provides in part: "(c) The employee also shall receive [in addition to VRMA] additional living expenses necessitated by the vocational rehabilitation services, together with all reasonable and necessary vocational training, at the expense of the employer, but in no event shall the expenses, counseling fees, training, maintenance allowance, and costs associated with, or arising out of, vocational rehabilitation services incurred after the employee's request for vocational rehabilitation services, except temporary disability payments, exceed sixteen thousand dollars (\$16,000)."

salary under former section 4800. Prior to its amendment effective September 23, 1994, former section 4800 (which is applicable here) provided in part: "Whenever any member of the California Highway Patrol . . . is disabled by injury arising out of and in the course of his duties, he shall become entitled, regardless of his period of service with the patrol, . . . to leave of absence while so disabled without loss of salary, *in lieu of disability payments under this chapter*, for a period of not exceeding one year." (Italics added.) The purpose of this full-salary leave of absence benefit is to provide eligible CHP member's with an extra benefit for incurring the risks of active law enforcement. (1 Hanna, *supra*, § 3.114[1], p. 3-91.)

## II

### *Statutory Construction of Former Section 4800*

■ Edgar contends WCAB erred in construing a portion of his leave of absence salary payments under former section 4800 to be VRMA for purposes of determining the amount of vocational rehabilitation services CHP must provide him under the VR cap. We agree.

As we have discussed, former section 4800 provided in part that an eligible CHP member's leave of absence salary under that section was "in lieu of disability payments under this chapter." To properly interpret this statute, we must first determine the meaning of the phrases "in lieu of disability payments" and "under this chapter." In construing former section 4800, we are mindful that section 3202[10] provides in part that division 4 of the Labor Code "shall be liberally construed by the courts with the purpose of extending [its] benefits for the protection of persons injured in the course of their employment." As we shall explain, former section 4800 was codified in division 4. Accordingly, we shall liberally construe that section for the purpose of extending its benefits for the protection of Edgar.

### A. *Meaning of "in lieu of disability payments"*

With respect to the phrase "in lieu of disability payments" as set forth in former section 4800, this statute made no distinction between temporary and permanent "disability payments." When read literally, the statute appeared to provide that an industrially disabled CHP member was entitled to a one-year leave of absence with full salary in lieu of *any* disability payments, whether they were for temporary or permanent disability indemnity.

However, section 4800 cannot be interpreted in isolation; it must be read together with sections 4803 and 4804, and construed with them so that all

---

[10]The entire text of section 3202 is set forth in footnote 4, *ante*.

three sections may be given effect if possible. (*Amborn* v. *Workmen's Comp. Appeals Bd.* (1971) 19 Cal.App.3d 953, 956 [97 Cal.Rptr. 466].) Section 4803[11] contains a clause providing that "[s]ection 4800 . . . refers to *temporary* disability only." (Italics added.) Section 4804[12] provides in part that "[n]o disability indemnity shall be paid to said member of the California Highway Patrol . . . as· *temporary* disability concurrently with wages or salary payments." (Italics added.) The plain meaning of sections 4803 and 4804 indicates that a highway patrol officer receiving full pay under former section 4800 while on leave of absence is not entitled to concurrently receive temporary disability indemnity payments.

California courts have construed the phrase "in lieu of disability payments" in former section 4800 to mean "in lieu of *temporary* disability payments," and have held that an industrially injured highway patrol officer is entitled to salaried leave of absence on account of his disability under former section 4800 beyond the date when his temporary disability ceases and his permanent disability starts, except as otherwise limited (to one year) by former section 4800. (See, e.g., *Amborn* v. *Workmen's Comp. Appeals Bd., supra,* 19 Cal.App.3d at p. 959.)

In the case of *Dept. of Motor Vehicles* v. *Ind. Acc. Com.* (1947) 78 Cal.App.2d 626 [178 P.2d 43] (*DMV*), the court addressed the issue of whether an industrially disabled CHP officer receiving his full salary while on leave of absence under former section 4800 was entitled to concurrently receive permanent disability indemnity. Construing former section 4800 together with sections 4803 and 4804 in light of established rules of statutory construction, the *DMV* court held "it was intended by the Legislature to provide an injured patrolman with his full pay for a year in the place of any *temporary* disability allowance, but in no way to limit his right in accordance

---

[11]Section 4803 provides in part: "Whenever such disability of such member of the California Highway Patrol . . . continues for a period beyond one year, such member . . . shall thereafter be subject, as to disability indemnity, to the provisions of this division other than *Section 4800, which refers to temporary disability only,* during the remainder of the disability, . . . and the leave of absence shall continue." (Italics added.)

A 1939 amendment to section 4803 inserted the words "which refers to temporary disability only" after the reference to section 4800. (See Historical Note, 44A West's Ann. Lab. Code (1989 ed.) § 4803, p. 530.)

[12]Section 4804 provides in part: "No disability indemnity shall be paid to said member of the California Highway Patrol . . . as *temporary* disability concurrently with wages or salary payments." (Italics added.)

The legislative history of section 4804 indicates a 1939 amendment inserted the phrase "either as temporary or permanent disability," but a 1943 amendment deleted (among other things) payment for "permanent" disability. (See Historical Note, 44A West's Ann. Lab. Code, *supra,* § 4804, p. 531.)

with the general rule to receive an award of *permanent* disability indemnity concurrently with his salary." (*DMV, supra,* 78 Cal.App.2d at pp. 629-630, italics added.) In so holding, the court rejected the contention that the leave of absence salary paid to a highway patrol officer under former section 4800 was "compensation" as the term was defined in section 3207,[13] that is, a disability allowance or compensation for his injury, as distinguished from salary. (78 Cal.App.2d at p. 629.)

The *DMV* case stands for the proposition that a highway patrol officer's leave of absence salary under former section 4800 is salary in lieu of *temporary* disability indemnity payments, but not salary in lieu of *permanent* disability indemnity payments. Thus, an industrially disabled highway patrol officer may not concurrently receive both his or her full salary under former section 4800 and *temporary* disability indemnity payments, but may concurrently receive the full salary and *permanent* disability indemnity payments.

This distinction between temporary and permanent disability indemnity is important with respect to the present petition for writ of review proceeding because CHP contends, erroneously (as we shall discuss, *post*), that (1) Edgar's salary under section 4800 was "in lieu of" both temporary and permanent disability indemnity payments; and (2) "VRMA is a form of temporary disability [indemnity]" such that a portion of Edgar's full leave of absence pay under former section 4800 should be deemed to be "in lieu of" VRMA.

B.  *Meaning of "under this chapter"*

With respect to the meaning of the second phrase in former section 4800 with which we are here concerned—"under this chapter"—we begin by noting that former section 4800 was set forth in article 6 ("Special Payment to Certain Persons") of *chapter 2* ("Compensation Schedules") of part 2 ("Computation of Compensation") of division 4 ("Workers' Compensation and Insurance"). (44A West's Ann. Lab. Code, *supra*, pp. 1 (div. 4), 372 (pt. 2), 392 (ch. 2), 526-527 (art. 6, § 4800).) Thus, the phrase "under this chapter" as set forth in former section 4800 is a reference to chapter 2 (§§ 4450-4855) of part 2 of division 4.

However, section 139.5, which governs an employer's obligation to provide VRMA to an industrially disabled employee, was not (and is not) found

---

[13]Section 3207, as amended in 1965 (after *DMV, supra,* 78 Cal.App.2d 626, was decided in 1947), provides in part: " 'Compensation' means compensation under Division 4 and includes every benefit or payment conferred by Division 4 upon an injured employee, including vocational rehabilitation."

The 1965 amendment added vocational rehabilitation as a benefit. (See Historical Note, 44A West's Ann. Lab. Code, *supra*, § 3207, p. 24.)

in the same chapter or even the same division. Rather, section 139.5 is set forth in chapter 5 ("Division of Industrial Accidents") of division 1 ("Department of Industrial Relations").

We thus conclude the plain language set forth in former section 4800 makes clear the Legislature's intent that the one-year leave of absence salary under that statute be in lieu of temporary disability payments under chapter 2 of part 2 of division 4, and that it not be in lieu of VRMA payable under section 139.5, which is codified in chapter 5 of division 1.

### C. Sections 4850 and 4800.5

Our conclusion is also supported by the fact that the Legislature was presented with an opportunity in 1989, and again in 1994, to amend former section 4800 to provide that the one-year leave of absence salary provided by that section be in lieu of VRMA, but it did not do so. In 1989 the Legislature amended section 4850, which (before the amendment) had provided full leave of absence salary to various classes of industrially disabled firefighting and law enforcement employees (other than CHP members) "in lieu of temporary disability payments, if any, which would be payable under this chapter [i.e., chapter 2 of part 2 of division 4] . . . ."[14] Effective January 1, 1990, the Legislature amended section 4850 to provide that the leave of absence salary is "in lieu of temporary disability payments *or maintenance allowance payments under section 139.5*, if any, which would be payable under this chapter . . . ."[15] (Italics added.) In amending section 4850 to provide that the leave of absence salary provided therein was in lieu of VRMA, the Legislature did not similarly amend former section 4800.

---

[14]Before it was amended in 1989, section 4850 provided in part: "Whenever any city policeman, harbor policeman of any harbor district, city, county, or district firefighter, sheriff or any officer or employee of a sheriff's office, any inspector, investigator, detective, or personnel with comparable title in any district attorney's office, or lifeguard employed year round on a regular, full-time basis by a county of the first class, who is a member of the Public Employees' Retirement System or subject to the County Employees Retirement Law of 1937 (Chapter 3 (commencing with Section 31450) of Part 3 of Division 4 of Title 3 of the Government Code) is disabled, whether temporarily or permanently, by injury or illness arising out of and in the course of his or her duties, he or she shall become entitled, regardless of his or her period of service with the city, county, or district, to leave of absence while so disabled without loss of salary *in lieu of temporary disability payments, if any, which would be payable under this chapter*, for the period of the disability, but not exceeding one year, or until such earlier date as he or she is retired on permanent disability pension, and is actually receiving disability pension payments, or advanced disability pension payments pursuant to Section 4850.3 . . . ." (44A West's Ann. Lab. Code, *supra*, p. 536, italics added.)

[15]Section 4850 currently provides in part: "(a) Whenever any city policeman, city, county, or district firefighter, sheriff or any officer or employee of a sheriff's office, any inspector, investigator, detective, or personnel with comparable title in any district attorney's office, or lifeguard employed year round on a regular, full-time basis by a county of the first class, who is a member of the Public Employees' Retirement System or subject to the County Employees Retirement Law of 1937 (Chapter 3 (commencing with Section 31450) of Part 3 of Division

Five years later, in 1994, the Legislature amended former section 4800 by deleting references that had made the section applicable to CHP members.[16] At the same time, the Legislature added section 4800.5 which, like former section 4800, provides industrially disabled CHP members with one-year leave of absence salary "in lieu of disability payments under this chapter [i.e., chapter 2 of part 2 of division 4]. . . ."[17] If the Legislature had intended a disabled CHP's member's leave of absence salary to be in lieu of VRMA, it undoubtedly would have so provided.

We thus presume the Legislature, in amending former section 4800 and adding section 4800.5 in 1994, was aware of its prior amendment of section 4850 (discussed *ante*) in 1989. We also presume the Legislature intended that leave of absence salary under section 4850 be in lieu of VRMA, but that an industrially disabled CHP member's leave of absence salary under section 4800.5 and former section 4800 not be in lieu of VRMA.

The legislative histories of former section 4800, and sections 4800.5 and 4850, thus indicate a legislative intent to create a disparity in compensation among injured workers. In this regard, we concur in the observation of the court in *Jimenez* v. *Workers' Comp. Appeals Bd., supra,* 1 Cal.App.4th at page 65, that "the workers' compensation system is replete with examples of disparity between workers based on many factors."

CHP complains that Edgar "wants [vocational] rehabilitation but also wants to avoid using up his [$16,000] rehabilitation cap." CHP also contends Edgar will receive "an added benefit not contemplated by the Legislature" unless a portion of Edgar's leave of absence salary under former section 4800 is treated as a credit against the VR cap, thereby reducing the rehabilitation benefits available to Edgar under the VR cap. We disagree. As we have discussed, the purpose of the leave of absence salary benefit under

---

4 of Title 3 of the Government Code) is disabled, whether temporarily or permanently, by injury or illness arising out of and in the course of his or her duties, he or she shall become entitled, regardless of his or her period of service with the city or county, to leave of absence while so disabled without loss of salary *in lieu of temporary disability payments or maintenance allowance payments under Section 139.5, if any, which would be payable under this chapter,* for the period of the disability, but not exceeding one year, or until such earlier date as he or she is retired on permanent disability pension, and is actually receiving disability pension payments, or advanced disability pension payments pursuant to Section 4850.3." (Italics added.)

[16]Statutes 1994, chapter 762, section 7; see also Historical and Statutory Notes (1990 Legislation), 44A West's Annotated Labor Code (1998 pocket supp.) section 4800, page 176.

[17]Statutes 1994, chapter 762, section 8. Section 4800.5 applies to periods of disability commencing on or after January 1, 1995. (§ 4800.5, subd. (e).)

former section 4800 is to provide an eligible CHP member with an *extra* benefit for incurring the risks of active law enforcement. (1 Hanna, *supra*, § 3.114[1], p. 3-91.) In permitting a disabled CHP member to receive the leave of absence salary benefit under former section 4800 in lieu of temporary disability indemnity, but not in lieu of VRMA and without granting CHP a credit against the VR cap, the Legislature is at most granting another benefit to the CHP member. This, as we have explained, is entirely consistent with the purpose of the leave of absence salary benefit under former section 4800. It is also consistent with the purpose of rehabilitation under the workers' compensation scheme, which (as we have discussed) is to restore an injured employee to suitable employment. (*Moyer* v. *Workmen's Comp. Appeals Bd., supra*, 10 Cal.3d at p. 232.)

### D. *Ritchie*

In deciding that a portion of Edgar's leave of absence salary payments under former section 4800 was the equivalent of VRMA for purposes of determining the vocational rehabilitation services benefits CHP must provide him under the VR cap, WCAB erroneously relied on *Ritchie, supra*, 24 Cal.App.4th 1174. The issue in *Ritchie* was whether an injured municipal police detective, who was entitled to a leave of absence without loss of salary under section 4850, was entitled to receive VRMA after the effective date of his disability retirement under the Public Employees' Retirement System (PERS). (*Ritchie, supra*, 24 Cal.App.4th at pp. 1177-1178.)

In holding that the detective and other employees covered by section 4850 are not entitled to receive VRMA after the effective date of a PERS disability retirement, the court in *Ritchie* noted that section 4850 provides that the salary benefit under that section is in lieu of TD or VRMA.[18] (*Ritchie, supra*, 24 Cal.App.4th at pp. 1180, 1189.) The *Ritchie* case is factually and legally distinguishable, and thus inapposite, because the present writ of review proceeding, unlike *Ritchie*, involves former section 4800, under which (as we have explained) the leave of absence salary received by an eligible CHP member is in lieu of TD, but not in lieu of VRMA.

### E. *Conclusion*

In liberally construing former section 4800 together with sections 139.5, 4803, 4804, 4850 as amended in 1990, and 4800.5 as enacted in 1994, we

---

[18]As we have discussed, section 4850 provides that the leave of absence salary benefit is "in lieu of temporary disability payments *or maintenance allowance payments under Section 139.5*, if any, which would be payable under this chapter." (Italics added; see fn. 15, *ante*.)

conclude the Legislature intended that leave of absence salary benefits paid by CHP under former section 4800 to an industrially injured CHP member during the member's participation in vocational rehabilitation be in lieu of TD benefits, but not in lieu of VRMA. We further conclude the Legislature did not intend that a portion of leave of absence salary paid under former section 4800, in the maximum weekly amount of $246 as provided in subdivision (c) of section 139.5, be included in calculating vocational rehabilitation services benefits CHP must provide to an industrially injured CHP officer under the $16,000 VR cap, and thus CHP is not entitled to apply a $246 per week credit against the VR cap during the period when the disabled officer receives leave of absence salary benefits under former section 4800 while participating in vocational rehabilitation.

### DISPOSITION

WCAB's order rescinding the WCJ's decision, joint findings and order, and substituting its own findings and order, is annulled. The decision, joint findings and order of the WCJ are reinstated. Edgar shall recover his costs.

Kremer, P. J., and Huffman, J., concurred

Respondents' petition for review by the Supreme Court was denied October 14, 1998.