[No. S065546. Aug. 20, 1998.]

AVALON BAY FOODS et al., Petitioners, v.
WORKERS' COMPENSATION APPEALS BOARD and ROBERT
MOORE, Respondents.

**COUNSEL**

McMurchie, Brandenburger, Weill, Lenahan & Lee and Teresa L. Armstrong for Petitioners.

Finnegan, Marks & Hampton, Michael A. Marks and Ellen Sims Langille as Amici Curiae on behalf of Petitioners.

Frederick J. Gibbons and Manda G. Olmstead for Respondents.

William A. Herreras as Amicus Curiae on behalf of Respondents.

**OPINION**

**MOSK, J.**—In this matter, an injured employee sought a penalty against his workers' compensation insurance carrier, contending that it unreasonably

delayed payment of his medical treatment transportation benefits. The Workers' Compensation Appeals Board (hereafter the board) determined that the delay, amounting to less than 60 days, was unreasonable and ordered the carrier to pay a 10 percent penalty, pursuant to Labor Code section 5814.

We granted review to address two related questions of law: (1) whether the penalty for unreasonable delay in payment of medical treatment transportation expenses properly applies to the full amount of the award for medical treatment expenses, and (2) whether the employer, or its insurer, has 60 days after receipt of documentation in which to reimburse the injured worker for medical treatment transportation costs, pursuant to Labor Code section 4603.2, subdivision (b).

We conclude that the answer to both questions is yes. Medical treatment transportation benefits are an element of overall medical treatment benefits under Labor Code section 4600, not a different class of benefits. For that reason, they are subject to the 60-day time limit for payment applicable to other medical treatment benefits.

Because the insurer in this matter reimbursed the injured employee within 60 days of receiving documentation itemizing his medical treatment transportation costs, its payment was timely; no penalty should have been applied. Accordingly, we affirm the judgment of the Court of Appeal annulling the board's order.

## I

In February 1995, petitioner Robert Moore, while employed as a food production worker for Avalon Bay Foods, suffered injury to his left leg ultimately resulting in amputation below the knee.

On May 23, 1996, Moore submitted a claim through his attorney to ITT Hartford Accident and Indemnity (hereafter ITT Hartford) for medical treatment transportation expenses for 12 trips from Marysville to Sacramento, between December 21, 1995, and May 8, 1996. The claim, prepared by a legal assistant for Moore's attorney, included a handwritten mileage log indicating that Moore had traveled a total of 1,270 miles in order to obtain medical treatment; it also noted at the bottom that he "[h]ad to pay $20.00 every trip to get a ride down to Sacramento."

On May 28, ITT Hartford received the claim. The following day, the legal assistant for Moore's attorney sent another copy of the mileage log, by facsimile, to ITT Hartford, along with a cover sheet stating: "Applicant is

having financial difficulties and we would very much appreciate anything you can do in speeding up the reimbursement process."

On June 12, the legal assistant for Moore's attorney spoke with the claims adjuster for ITT Hartford, who explained that she "had problems" because Moore was only entitled to mileage expenses and she could not pay those expenses because he had someone else drive him. Apparently under the impression that each of the drivers used his own vehicle, she requested their names, addresses, and Social Security numbers. According to the legal assistant, the claims adjuster indicated that she would not pay either the mileage or the $20 per trip. Be that as it may, following the conversation, the legal assistant sent a letter by facsimile to the claims adjuster, stating: "Regarding mileage submitted—yes [Moore] is paying the driver the 24 cents per mile he gets but he has to prepay this. One person [charges] $20.00, another [charges] $30.00. They will get names addresses, etc. of drivers." In fact, Moore had engaged the service of a driver to transport him in his own van and he paid for the gasoline.

On June 17, the claims adjuster authorized payment of $240 for medical treatment transportation benefits, at a rate of $20 per trip, and payment was issued on June 26. She believed that she had 60 days to process the claim, pursuant to Labor Code section 4603.2, which requires that payment of medical treatment expenses provided for, or authorized by, a treating physician be paid within 60 days of proper documentation.

On June 28, Moore's attorney filed a declaration of readiness, requesting "medical mileage" and seeking a penalty against ITT Hartford. The matter was scheduled for a pretrial conference on July 23. A hearing representative for ITT Hartford spoke with a receptionist for Moore's attorney and asked why a hearing had been set. The receptionist explained that it was "set on penalties." After the hearing representative stated that ITT Hartford had paid $240, the receptionist noted that the mileage sheet requested $20 per trip and indicated that "she could see why $240 was paid."

On July 23, the day of the pretrial conference, apparently after learning that Moore sought full mileage reimbursement, ITT Hartford issued a further payment of $68.40, for the balance of the requested mileage, at a rate of $0.24 per mile.

On August 5, the matter proceeded to hearing on the issue of penalties. The workers' compensation judge ruled that ITT Hartford unreasonably delayed payment of the medical treatment transportation benefit. Although it acknowledged that there was some confusion on the part of the claims

adjuster about the documentation, which indicated mileage but also referred to an expense of $20 per trip, it concluded that ITT Hartford "had a duty and legal obligation to pay at least one or the other within a reasonable time, and not refuse or fail to pay anything." It observed that ITT Hartford was incorrect in assuming that it had 60 days to pay, concluding that Labor Code section 4603.2 was inapplicable. It ordered ITT to pay a 10 percent penalty for "all past, present, and future medical costs, including mileage . . . less 10 [percent] of said penalties on past and present [costs] applicable to applicant's attorney." The board denied ITT Hartford's petition for rehearing.

The Court of Appeal annulled the order. It concluded that the finding of unreasonable delay was supported by substantial evidence, but determined that the penalty for delay applied only to the total expenses for transportation to appointments for medical treatment.

We granted review. We now affirm the judgment.

## II

In *Gallamore v. Workers' Comp. Appeals Bd.* (1979) 23 Cal.3d 815 [153 Cal.Rptr. 590, 591 P.2d 1242] (hereafter *Gallamore*), we considered the proper computation of penalties in workers' compensation cases under Labor Code section 5814 when a payment of benefits has been unreasonably delayed or refused.[1]

There, the applicant requested assessment of three separate penalties under Labor Code section 5814, for delay in payment of permanent disability payments, claim of an unauthorized overpayment credit, and failure to pay travel expenses incurred in submitting to medical examinations by two physicians. (*Gallamore, supra,* 23 Cal.3d at pp. 819-820.) The board had affirmed an award of only a single penalty based solely on the carrier's delay in advancing permanent disability payments, ruling, inter alia, that the amount of benefits for travel expenses was de minimis. (*Id.* at pp. 820-821.)

The applicant argued that each 10 percent penalty imposed under Labor Code section 5814 must be assessed against the full amount of the award and all forms of compensation. The insurance carrier contended that the penalty should be applied only to the net amount of benefits remaining unpaid,

---

[1]Labor Code section 5814 requires, in pertinent part: "When payment of compensation has been unreasonably delayed or refused, either. prior to or subsequent to the issuance of an award, the full amount of the order, decision or award shall be increased by 10 percent. The question of delay and the reasonableness of the cause therefor shall be determined by the appeals board in accordance with the facts."

thereby permitting credit for amounts previously paid without delay on the specific benefit awarded. We rejected both arguments. As we explained: "Our analysis of both the statutory language and applicable authorities convinces us . . . that if, as in the usual case, an award is readily severable into the different classes or categories of compensation as defined in the Workers' Compensation Act (Lab. Code, § 3200 et seq.), then the penalty is to be assessed against only the amount awarded for the particular benefit of the kind delayed or refused." (*Gallamore, supra,* 23 Cal.3d at p. 824.) We thus adopted "the more moderate construction of the statutory language, holding that the phrase 'full amount of the . . . award' in section 5814 refers to the full amount of the award for the particular class of benefit delayed or withheld. . . . [¶] . . . The statutory language, referring to the 'full' amount of an award makes no provision for credit for any partial payments made under compulsion of an award. [Citation.] Thus, if any part of a specific benefit has been delayed or withheld, the penalty is imposed against the entirety of that benefit." (*Id.* at pp. 826-827.)

We also concluded that Labor Code section 5814 does not recognize any exception for de minimis delinquencies in determining whether to assess a penalty. (*Gallamore, supra,* 23 Cal.3d at p. 822.) We observed that "[t]he seeming severity of the foregoing rule, requiring a 10 percent penalty for unreasonable delay in payments regardless of the amount involved, is mitigated by application of the further rule . . . that the penalty is to relate only to that class of benefits which were delayed or refused." (*Id.* at p. 823.)

On this basis, we annulled the board's decision awarding only a single penalty, and remanded for consideration whether a second penalty should be imposed for the separate act of misconduct in obtaining an unauthorized credit for overpayments. (*Gallamore, supra,* 23 Cal.3d at p. 827.) With regard to the claim for a separate penalty based on the travel expenses, we stated as follows: "Additionally, applicant asserted that carrier unreasonably delayed in reimbursing his travel expenses, a further act of misconduct which, if proved, would justify another 10 percent penalty, applied to the total amount of travel expenses for which reimbursement was proper." (*Ibid.*) We referred expressly to travel expenses in connection with "submitting to medical examinations" (*id.* at p. 819)—i.e., medical-legal expenses.[2] We did not have occasion to consider the question at issue here, i.e., whether

---

[2]Labor Code section 4620, subdivision (a) defines medical-legal expenses as: "any costs and expenses incurred by or on behalf of any party, the administrative director, the board, or a referee for X-rays, laboratory fees, other diagnostic tests, medical reports, medical records, medical testimony, and, as needed, interpreter's fees, for the purpose of proving or disproving a contested claim." Medical-legal expenses include mileage for transportation, payable *in advance* when an employee "submits to examination by a physician" at the request of the employer or the employer's insurer or workers' compensation administrators. (Lab. Code,

medical treatment transportation benefits are a different class of compensation from medical treatment benefits for the purposes of imposing a penalty under Labor Code section 5814.

In *Rhiner* v. *Workers' Comp. Appeals Bd.* (1993) 4 Cal.4th 1213, 1216 [18 Cal.Rptr.2d 129, 848 P.2d 244], we reaffirmed our holding in *Gallamore* that a penalty under Labor Code section 5814 must be applied to the total amount of the award for the class of compensation in which the payment was unreasonably delayed or refused, including all past, present, and future payments, without deduction or credit for any timely payments. We explained that in enacting Labor Code section 5814, the Legislature directed that "the 'full amount of the order, decision or award' be increased by 10 percent, not that an increase in the form of interest be limited to the payments of compensation unreasonably delayed." (4 Cal.4th at p. 1218.)

In so holding, we emphasized that we are bound by the clear and unambiguous language of Labor Code section 5814, which requires potentially severe penalties against employers or their insurance carriers. (*Rhiner* v. *Workers' Comp. Appeals Bd., supra*, 4 Cal.4th at p. 1226.) "It is true, as the employer argues, that under section 5814 the employer's unreasonable delay or refusal to pay a small amount of benefits to the injured employee may result in a large penalty. It is also true, however, that an unreasonable delay or refusal in payment that is monetarily of little consequence to an employer or carrier may be disastrous to an injured worker struggling to obtain medical treatment and to pay basic household expenses. [Citation.] Thus, there are competing policy considerations. When the Legislature enacted section 5814, it struck what it concluded to be the appropriate balance between competing considerations. Second-guessing that policy determination, which is what the employer would have us do, is not an appropriate task for this court." (*Ibid.*, fns. omitted.)

To summarize, under *Gallamore* and *Rhiner*, a penalty under Labor Code section 5814 is mandatory when payment of benefits, even if de minimis, has been unreasonably delayed or refused, but such penalty is to be assessed only against the class of benefits that was actually delayed or refused.

 This case presents the question, which was not resolved in our previous cases, whether a penalty for delay in payment of medical

---

§ 4600 ["The mileage and tolls shall be paid to the employee at the time he or she is given notification of the time and place of the examination."].)

treatment transportation benefits properly applies to the total amount of medical treatment benefits under Labor Code section 4600.[3]

■ The statute provides, in pertinent part: "Medical, surgical, chiropractic, and hospital treatment, including nursing, medicines, medical and surgical supplies, crutches, and apparatus, including orthotic and prosthetic devices and services, that is reasonably required to cure or relieve from the effects of the injury shall be provided by the employer." (Lab. Code, § 4600.)

Although Labor Code section 4600 does not expressly refer to medical treatment transportation expenses as an aspect of medical treatment benefits, they have consistently been so regarded under the workers' compensation laws. (See *Hutchinson* v. *Workers' Comp. Appeals Bd.* (1989) 209 Cal.App.3d 372, 376 [257 Cal.Rptr. 240]; 1 Hanna, Cal. Law of Employee Injuries & Workers' Compensation (rev. 2d ed. 1997) Medical and Hospital Treatment, § 5.04[1], p. 5-22 ["The employee is also entitled to receive reasonable travel and living expenses incurred when the employee must undergo treatment away from his or her residence." (Fn. omitted.)].)

*Hutchinson*, holding that an employee is entitled to medical treatment transportation expenses to obtain prescribed medication, relied on the board's "practice of allowing [Labor Code] section 4600 compensation for transportation expenses to medical and chiropractic treatment, rehabilitation and physical therapy. Medication prescribed by a treating physician is no less important 'to cure or relieve from the effects of the injury' (§ 4600) than physical therapy and other treatments prescribed by the physician." (*Hutchinson* v. *Workers' Comp. Appeals Bd.*, *supra*, 209 Cal.App.3d at p. 376.) It thus reasoned, in substance, that just as medical treatment transportation expenses are necessary in order to obtain medical treatment, so are such expenses necessary in order to obtain medication prescribed as part of that treatment.

*Hutchinson* also emphasized: "[Labor Code section] 3202 requires us to construe section 4600 liberally to extend its benefits for the protection of

---

[3]Penalty for unreasonable delay or denial of "payment of compensation" under Labor Code section 5814 unquestionably applies to delinquent payment of medical treatment benefits under Labor Code section 4600. (*Adams* v. *Workers' Comp. Appeals Bd.* (1976) 18 Cal.3d 226 [133 Cal.Rptr. 517, 555 P.2d 303].) "Section 3207 [of the Labor Code] provides that ' "[c]ompensation" . . . includes every benefit or payment conferred by [the workers' compensation laws] upon an injured employee . . . .' " (*Id.* at p. 231.) "[The] literal application of section 5814 would accord with the constructional policy of liberally interpreting the workers' compensation laws for the benefit of injured workers and with the policy of encouraging the employer and carrier to provide prompt medical treatment." (*Id.* at p. 230.)

persons injured in the course of their employment. [Citations.] [¶] We must bear in mind that the underlying policy of the workers' ·compensation statutes and their constitutional ʼfoundation (Cal. Const., art. XIV, § 4), as well as the recurrent theme of countless appellate decisions on the matter, has been one of pervasive and abiding solicitude for the worker." (209 Cal.App.3d at pp. 375-376; see *Johnson* v. *Workers' Comp. Appeals Bd.* (1984) 37 Cal.3d 235, 241 [207 Cal.Rptr. 857, 689 P.2d 1127] [". . . section 3202 'requires the courts to view the [Workers' Compensation Act] from the standpoint of the injured worker, with the objective of securing for him the maximum benefits to which he is entitled.' "].)

The board's practice, to which *Hutchinson* refers, of awarding medical treatment transportation expenses as an aspect of medical treatment benefits is of long standing. As early as 1923, the Industrial Accident Commission, the board's predecessor, ruled that an employee is entitled to the fare for transportation for the purpose of obtaining medical treatment. (*Bundock* v. *Herndon and Finnigan* (1923) 10 I.A.C. 32, 33.) As explained in another early decision, *Cockrill* v. *Richmond Roofing Co.* (1924) 11 I.A.C. 69, 70, "the reasonable cost of such traveling expenses . . . is an item of the medical treatment required to cure and relieve [the employee] from the effect of his injury." (See also, e.g., *Woolworth* v. *Columbia Casualty Co.* (1927) 14 I.A.C. 9 [expense incurred by employee for streetcar and ferry fare in going from his home to the place where treatment is given is a part of the liability of a defendant under the provisions relating to the furnishing of necessary medical treatment]; *Soren* v. *Standard Upholstering Co.* (1929) 16 I.A.C. 15 [employee was not required to travel for medical treatment at his own expense].) ██ The board's interpretation of statutes involving the workers' compensation laws are "entitled to significant respect upon judicial review." (*Nicklesberg* v. *Workers' Comp. Appeals Bd.* (1991) 54 Cal.3d 288, 299-300 [285 Cal.Rptr. 86, 814 P.2d 1328]; see *Nipper* v. *California Auto. Assigned Risk Plan* (1977) 19 Cal.3d 35, 45 [136 Cal.Rptr. 854, 560 P.2d 743] ["We have generally accorded respect to administrative interpretations of law and, unless clearly erroneous, have deemed them significant factors in ascertaining statutory meaning and purpose."].)

██ The Court of Appeal explained in *Caldwell* v. *Workmen's Comp. App. Bd.* (1969) 268 Cal.App.2d 912, 915 [74 Cal.Rptr. 517] (hereafter *Caldwell*): "Prior to 1959 there was no express provision in [Labor Code] section 4600 or its predecessor sections that a workman could obtain travel expenses even when submitting at the employer's, the carrier's or the board's request to examination or treatment by the physician designated by them. Yet in the spirit of [Labor Code] section 3202 the commission read into the sections the right of the workman to such ·expenses. . . . '[S]uch

expenses have been held to be part of treatment where reasonably necessary, in virtually thousands of cases before the Industrial Accident Commission and Workmen's Compensation Appeals Board. [Citations.]' "[4]

As these decisions show, the right to medical treatment transportation expenses under Labor Code section 4600 has been implied as *dependent on and ancillary to* medical treatment benefits, not as a different benefit. Medical treatment transportation benefits have not been treated as having a separate existence from all other medical treatment benefits, but, instead, have been included as derivative of medical treatment benefits. As such, they have been viewed as a necessary means to the end of ensuring prompt medical treatment so that an injured worker may return to the workplace.

Because medical treatment transportation benefits thus arise as an aspect of the broad class of medical treatment benefits, it follows that a penalty for unreasonable refusal or delay of such expenses should be computed on the basis of the total amount of medical treatment expenses. Such has, in fact, been the prevailing practice of the board, as reflected in its relevant decisions.

Thus, *Smith* v. *ESIS, Inc.* (1996) SBA 74576, 74580, 24 Cal. Workers' Comp. Rptr. 139, 140, concluded that "medical treatment is a single species of benefits that includes medical travel expense." It explained that "[t]he cost of such travel is a subspecies of medical benefits and is no different from other expenses, such as drugs and medical appliances, that contribute to the worker's cure. If procrastination in payment for prescribed medication had resulted in delaying treatment, there would have been no question but that the entire cost of the medical treatment should be increased by 10 percent. Similar delay in treatment can be caused by failure to pay the cost of travel to the doctor." (*Ibid.*)

*Smith* observed that "although the penalty as so measured seems harsh, the result is justified by the policy of *Labor Code [section] 5814* to compel

[4]*Caldwell* points out that, in 1959, Labor Code section 4600 was amended expressly to provide that the employee is entitled to receive, inter alia, reasonable travel expenses for medical-legal examinations, i.e., when he submits to an examination by a physician at the request of the employer, the employer's insurance carrier, the administrative director, the appeals board or a referee. (268 Cal.App.2d at p. 914; see present Lab. Code, § 4600, 2d par.) It held that the amendment was not intended to nullify prior practice of including entitlement to medical treatment transportation expenses under Labor Code section 4600: "We see no reason why the principle of section 3202 requiring liberal construction of the Workmen's Compensation Act should not require the continuance of such a construction of 4600 as presently constituted." (268 Cal.App.2d at p. 915.) It explained that "when sections 4600 and 3202 are read together" to so provide, it "accomplishes a purpose intended by the Legislature, the obtaining of compensation by an injured workman without expenses to him." (*Id.* at pp. 916-917.)

prompt furnishing of benefits to assist injured workers to return to employment as quickly as possible. Timely provision of medical treatment is an essential element of this goal. Failure to provide transportation to medical treatment can deprive a worker of necessary treatment and defeat this fundamental purpose of the workers' compensation law." (24 Cal. Workers' Comp. Rptr. at p. 140, original italics.) It distinguished our conclusion in *Gallamore* to the effect that the applicant therein could seek a penalty on his total amount of travel expenses in connection with submitting to medical examinations, on the basis that "the claim there was for failure to pay travel expense to a *medical-legal examination*"—not treatment-related travel expenses. (*Ibid.*, original italics; see *Gallamore, supra*, 23 Cal.3d at p. 827.)

*Remedy Home Health Care* v. *Workers' Comp. Appeals Bd.* (1996) 61 Cal.Comp.Cases 891, 893, similarly observed that "[w]ere transportation costs not included in medical treatment benefits, the injured worker might be deprived of necessary treatment, defeating the fundamental purpose of extending benefits for the protection of persons injured in the course of their employment." (See also, e.g., *White Wolf Potato Co.* v. *Workers' Comp. Appeals Bd.* (1990) 55 Cal.Comp.Cases 4 [accord]; *Safeway Stores, Inc.* v. *Workers' Comp. Appeals Bd.* (1988) 53 Cal.Comp.Cases 559 [accord]; contra, *Fountain* v. *Workers' Comp. Appeals Bd.* (1985) 50 Cal.Comp.Cases 13.)

In a recent in bank decision, *Jones* v. *Ukiah Timber Products* (1997) 62 Cal.Comp.Cases 1257, 1259, the board revisited the issue, again concluding that medical treatment transportation expenses to obtain medical treatment are "an element of the underlying benefit of medical treatment under Labor Code section 4600. Therefore, where an injured worker must undergo treatment by reason of the industrial injury, the cost of such medical treatment includes the cost of necessary travel expenses under Labor Code section 4600." Emphasizing that the penalty under Labor Code section 5814 "is designed to help an injured worker obtain essential treatment in order to allow his/her return to work as quickly as possible" (62 Cal.Comp.Cases at p. 1259), it determined that "an unreasonable delay in the provision of medical travel expenses warrants a 10% penalty under Labor Code section 5814 on the entire class of medical treatment expenses under Labor Code section 4600." (62 Cal.Comp.Cases at p. 1258, fn. omitted.)

The board's reasoning in *Smith, Remedy Home Health Care*, and *Jones* is persuasive. Without prompt payment of medical treatment transportation expenses, the right of an injured employee to prompt and adequate medical treatment is jeopardized. Moreover, an insurance carrier could reap the benefit of unreasonable delay in paying medical treatment benefits, including physician expenses, simply by delaying payment of medical transportation benefits. Accordingly, such medical treatment transportation expenses

are properly included as an aspect of the overall expenses of medical treatment when the employee must undergo medical treatment elsewhere than at his or her residence.

Nor does *Gallamore* require a different conclusion. The travel expenses at issue therein, i.e., in connection with submitting to medical examinations for the purpose of proving or disproving a claim, were not ancillary to any other benefit. Accordingly, such costs were properly treated as a separate class of benefits for the purpose of assessing a penalty under Labor Code section 5814.

## III

Here, the Court of Appeal determined that transportation expenses to obtain medical treatment should be treated as an independent class of benefits for the purposes of assessing a penalty for unreasonable refusal or delay under Labor Code section 5814. It erred thereby.

The Court of Appeal observed that such expenses are "readily severable," noting that "travel expense reimbursement to attend medical examinations is separately mentioned as a form of compensation by section 4600, which is evidence that the Legislature considers it its own class of benefits." The point is unhelpful: As discussed, the referenced portion of the statute refers only to travel expenses for medical-legal examination, not for medical treatment. It also begs the question. Labor Code section 4600 separately mentions numerous items of expenses—including nursing, medicines, medical and surgical supplies, crutches, and orthotic and prosthetic devices and services. Medical treatment benefits also imply benefits for transportation to obtain such treatment. Although the individual expenses for any such items might be "readily severable," they do not therefore constitute different classes or categories of benefits.

The Court of Appeal also concluded that medical treatment transportation benefits should be regarded as an independent class of benefits because they are not "for the care or treatment of an illness or an injury." The point is unpersuasive. As discussed, transportation expenses have been implied as an item of medical treatment benefits precisely because they are necessary to—and thus inseparable from—obtaining treatment of an illness or an injury.

The Court of Appeal opined that viewing the right to medical treatment transportation expenses as an independent class of benefits accords with public policy, observing that imposing a penalty based on the total cost of all

medical treatment would "upset the balance of fairness and result in a windfall to the applicant out of proportion to the type of conduct which warranted the penalty." Again, this reasoning is unpersuasive. As we explained in *Gallamore*, Labor Code section 5814 mandates a penalty on the "full amount" of the class of benefits unreasonably refused or delayed "despite the . . . de minimis nature of the amounts involved." (*Gallamore*, *supra*, 23 Cal.3d at p. 827.) "[T]he penalty must be imposed without regard. to the amount of benefits delayed or refused." (*Id.* at p. 822.)

■ The Legislature intended the potentially severe penalty for unreasonable refusal or denial of benefits to have an in terrorem effect on employers and their insurance carriers. (See *Davison* v. *Industrial Acc. Com.* (1966) 241 Cal.App.2d 15, 18 [50 Cal.Rptr. 76] ["The penalty for unreasonable delay in the payment of compensation is designed to help an employee obtain promptly the cure or relief he is entitled to under the law, and to compel his employer to provide this cure or relief in timely fashion."].) As we explained in *Gallamore*, a penalty imposed on the full amount of a class of benefits is required under Labor Code section 5814 in order to deter unreasonable delay in payment of the benefits in question. As we also emphasized, however, although such penalties are often severe, not every delay results in a penalty. " 'There may be an entirely reasonable excuse for delay. Normal or unavoidable delays in delivery of payment could allow time for accrual of minor sums of interest which would be but de minimis. *Such problems, however, may be met by the board in determining reasonableness of the delay.* Addition of a penalty is expressly limited by section 5814 to payments which are "unreasonably" delayed.' " (*Gallamore*, *supra*, 23 Cal.3d at pp. 822-823, original italics.)

■ Finally, the Court of Appeal suggested that a penalty calculated on the basis of the entire amount of transportation expenses presents a "significant deterrent to unreasonable conduct." It appears more likely, however, that a penalty based only on transportation expenses for medical treatment would often prove too insignificant to serve much deterrent effect. Here, for example, the penalty, if imposed, would amount to less than $100, with 10 percent of that amount going for attorneys' fees. Such a penalty would not ordinarily achieve the legislative purpose of Labor Code section 5814.

IV

Although we conclude that the Court of Appeal erred in concluding that medical treatment transportation benefits are an independent class of benefits, we affirm the judgment annulling the decision of the board on other grounds. No penalty was applicable under Labor Code section 5814: the payment to Moore, which was made less than 60 days from the time ITT

Hartford received the claim, was timely. As the claims adjuster correctly assumed, ITT Hartford had 60 days, under Labor Code section 4603.2, subdivision (b), to reimburse Moore's transportation expenses.

Labor Code section 4603.2, subdivision (b), provides, in pertinent part: "Payment for medical treatment provided or authorized by the treating physician shall be made by the employer within 60 days after receipt of each separate, itemized billing, together with any required reports. Any properly documented amount not paid within the 60-day period shall be increased by 10 percent, together with interest at the same rate as judgments in civil actions retroactive to the date of receipt of the bill, unless the employer does both of the following: [¶] (1) Pays the uncontested amount within the 60-day period. [¶] (2) Advises, in the manner prescribed by the administrative director, the physician, or another provider of the items being contested, the reasons for contesting these items . . . . [¶] . . . [¶] An employer's liability to a physician or another provider under this section for delayed payments shall not affect its liability to an employee under Section 5814 or any other provision of [the workers' compensation laws]." For the purposes of Labor Code section 4603.2, subdivision (b), "medical treatment" is defined as "the treatment to which an employee is entitled under Labor Code Section 4600." (Cal. Code Regs., tit. 8, § 9792.5, subd. (a)(2).)[5]

As discussed, Labor Code section 4600 does not refer expressly to medical treatment transportation expenses; nonetheless, the right to such expenses has been implied as derivative of, and ancillary to, medical treatment benefits. Because medical treatment transportation benefits are thus treated as an aspect of medical treatment benefits, it follows that the time limit for paying such benefits should be the same. In effect, when workers pay these travel expenses out of their pockets, they become "self-providers" for that aspect of their medical treatment. The board and our courts have inferred the right to reimbursement for those expenses under Labor Code section 4600; making that right subject to section 4603.2, subdivision (b), regarding the time allowed for payment of medical treatment is therefore logically consistent. Indeed, like other medical treatment expenses, medical treatment transportation expenses require documentation, which must be reviewed by the insurance carrier for accuracy and may require clarification.

Moreover, the 60-day period under Labor Code section 4603.2, subdivision (b), provides all parties a clear, easily applied rule that will enhance the

---

[5]The California Code of Regulations also includes in its schedule of administrative penalties, a penalty for failure to pay an injured worker, within 60 days of receiving a request, reimbursement for any transportation costs incurred to obtain medical treatment. (Cal. Code Regs., tit. 8, § 10111.1, subd. (a)(4).)

predictability of the compensation system's operation. The Legislature has determined that 60 days is a reasonable time period within which to process a bill for medical treatment expenses. To the extent the rule, as applied to medical treatment transportation expenses, may be seen as extending the time employees are out-of-pocket for transportation expenses, they can to a large degree control mitigation of any detriment because they determine the timing of their reimbursement requests. The payments at issue here were within that time period.[6]

Because our holding on this point is dispositive, we need not, and therefore do not, reach the purely factual question whether the board's finding of unreasonable delay was supported by substantial evidence.

V

For the foregoing reasons, the judgment of the Court of Appeal, annulling the order of the board, is affirmed. The case is remanded with directions to enter an order consistent with the views expressed herein.

George, C. J., Kennard, J., Werdegar, J., and Chin, J., concurred.

**BAXTER, J.,** Concurring.—I agree with the conclusion of the majority that there was no unreasonable delay by the workers' compensation insurance carrier in paying medical transportation benefits in this case, and therefore concur in the judgment. For that reason no penalty was warranted. That conclusion makes it unnecessary to address whether those benefits are a class of benefits distinct from medical benefits themselves. I would not reach that question and do not join in the dictum of the majority opinion that a penalty for delay in payment of medical transportation benefits applies to the full award for medical treatment expenses.

I also write separately to suggest that the Legislature revisit the subject of penalties for delay in payment of workers' compensation benefits. If the majority opinion dictum is correct in concluding that medical transportation expense is not a separate category of benefits and instead is within the general category of medical benefits, the 10 percent penalty for delay in paying those expenses may be grossly disproportionate to the employer's culpability. Even here the penalty could have been grossly disproportionate to the harm caused the worker by a delay since, under this court's construction of Labor Code section 5814, the penalty is assessed even for de minimis

---

[6]ITT Hartford also relies on Labor Code section 4622. Its reliance is misplaced; the statute relates only to medical-legal costs, as to which Labor Code section 5814 is specifically excluded as a remedy. (See Lab. Code, § 4622, subd. (c).)

delays or amounts and is calculated on the basis of the total amount of medical benefits, including future and as yet unknown medical expenses. (*Rhiner* v. *Workers' Comp. Appeals Bd.* (1993) 4 Cal.4th 1213, 1227 [18 Cal.Rptr.2d 129, 848 P.2d 244]; *Gallamore* v. *Workers' Comp. Appeals Bd.* (1979) 23 Cal.3d 815, 822-823, 826-827 [153 Cal.Rptr. 590, 591 P.2d 1242].)

Moreover, the excessive penalty question is not limited to transportation benefits. It is a recurrent question and may arise again in conjunction with any workers' compensation law penalty for delay. Unless the Legislature acts, it is inevitable that the validity of the workers' compensation law penalty scheme will be challenged on the grounds that draconian penalties are not necessary to deter delay and that some workers' compensation law penalties are so arbitrary that they offend both the Eighth Amendment and the due process clause of the Fourteenth Amendment. As the United States Supreme Court recently reaffirmed: "The Due Process and Equal Protection Clauses . . . protect individuals from sanctions which are downright irrational. *Williamson* v. *Lee Optical of Okla. Inc.,* 348 U.S. 483 [75 S.Ct. 461, 99 L.Ed. 563] (1955). The Eighth Amendment protects against excessive civil fines . . . . *Alexander* v. *United States,* 509 U.S. 544 [113 S.Ct. 2766, 125 L.Ed.2d 441] (1993); *Austin* v. *United States,* 509 U.S. 602 [113 S.Ct. 2801, 125 L.Ed.2d 488] (1993)." (*Hudson* v. *United States* (1997) 522 U.S. 93, __ [118 S.Ct. 488, 495, 139 L.Ed.2d 450, 461].)

Were we faced with such a case, the court might have no alternative but to invalidate the penalty scheme in toto. The Legislature, on the other hand, has the ability to preserve the penalty scheme by acting to ensure that penalties bear some rational relationship between the need to deter delay and the harm to the injured worker the delay in payment threatens. If a fine or forfeiture imposed as punishment for crime may not be "grossly disproportional to the gravity of the defendant's offense" (see *United States* v. *Bajakajian* (1998) __ U.S. __, __ [118 S.Ct. 2028, 2038, 141 L.Ed.2d 314]), surely a civil penalty, even when imposed for deterrent effect, may not be so. (See *BMW of North America, Inc.* v. *Gore* (1996) 517 U.S. 559 [116 S.Ct. 1589, 134 L.Ed.2d 809].)

The Legislature would do well to consider the constitutional implications of the present penalty scheme of the workers' compensation law.

**BROWN, J.,** Concurring.—I concur in the majority's determination that the employer's insurer had 60 days from the receipt of the request for reimbursement of medical treatment transportation expenses within which to pay the claim.

I write separately because I disagree with the majority's reliance on Labor Code section 4603.2, subdivision (b). (See maj. opn., *ante*, at pp. 1178-1180.) That statute expressly provides that "[a]n employer's liability *to a physician or another provider* under this section for delayed payments shall not affect its liability *to an employee* under [Labor Code] Section 5814," the penalty provision at issue in this case. (Italics added.) Moreover, the majority's conclusion that "when workers pay . . . travel expenses out of their pockets, they become 'self-providers' for that aspect of their medical treatment" under Labor Code section 4600 (maj. opn., *ante*, at p. 1179), is inconsistent with the governing regulatory framework. California Code of Regulations, title 8, section 10111.1 (section 10111.1), cited by the majority in a footnote (maj. opn., *ante*, at p. 1179, fn. 5), expressly draws a distinction between the "failure to object or pay to the injured worker . . . reimbursement for the reasonable expense incurred for *self-procured medical treatment* in accordance with Labor Code Section 4600" (italics added), which is addressed in section 10111.1, subdivision (a)(3), and the "failure . . . to object or pay the injured worker for any other *transportation*, temporary disability, meal or lodging expense incurred to obtain medical treatment or evaluation," which is addressed in section 10111.1, subdivision (a)(4). (Italics added.)

Although section 10111.1, subdivision (a)(4), addresses administrative penalties, its 60-day time limit for objecting to or paying an employee's medical treatment transportation expenses establishes that a payment made within 60 days is timely. In light of this conclusion, I have no occasion to address the analytically distinct question of whether medical treatment transportation expenses are part of medical treatment benefits. (See maj. opn., *ante*, at pp. 1177-1178.) I do note, however, that to treat them as such may present constitutional difficulties. (See conc. opn. of Baxter, J., *ante*, at pp. 1180-1181.)