[No. B126908. Second Dist., Div. Six. Aug. 24, 1999.]

VICTORIA KOPITSKE, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and SAFECO
INSURANCE COMPANY, Respondents.

**COUNSEL**

Kathleen M. Stout and Julie A. Bienefeld for Petitioner.

Law offices of Charles B. Crowder and Terry L. Smith for Respondent Safeco Insurance Company.

No appearance for Respondent Workers' Compensation Appeals Board.

**OPINION**

**GILBERT, Acting P. J.**—An injured worker receives vocational rehabilitation maintenance allowance (VRMA). Her employer unreasonably delays paying advances against permanent disability (PDA) per Labor Code section 139.5. In this case of first impression, we hold that the 10 percent penalty under Labor Code section 5814 should be assessed against permanent disability (PD).

Victoria Kopitske (Kopitske) petitions for review of the order of the Workers' Compensation Appeals Board (WCAB) denying reconsideration of its ruling that the penalty assessed for unreasonable delay in paying PDA should only be against VRMA supplemented by PDA, and not against PD.

We annul the order and direct the WCAB to enter a new order assessing the penalty against PD.

FACTS

Kopitske suffered an industrial injury. She received $372 per week as temporary disability (TD). Kopitske chose to enter vocational rehabilitation (VR) and received vocational rehabilitation temporary disability (VRTD) payments of $372 per week. Her condition became permanent and stationary (P&S). Accordingly, she was no longer eligible for TD payments. (Lab. Code, § 139.5, subd. (c).)[1] She continued to request VR services, making her eligible to receive VRMA. (§ 139.5, subd. (c).) She began receiving VRMA at the statutory rate of $246 per week.

Kopitske requested receipt of the additional amount of $126 per week as an advance from her PD (PDA) so that she would receive two-thirds of her average weekly earnings as of the date of injury. (§ 139.5, subd. (d)(1) & (2).)

Her employer's workers' compensation carrier, Safeco Insurance Company (Safeco), delayed providing PDA for 55 days. The workers' compensation judge found that the delay was unreasonable, but ruled that the 10 percent section 5814 penalty would be assessed only against VRMA benefits including PDA, and not against PD.

Because Kopitske had received VRMA of $11,300 and PDA of $5,800 for a total of $17,100, the 10 percent penalty assessed was $1,710. Kopitske is entitled to PD of $102,267. If the 10 percent penalty had been applied against PD, the penalty would be $10,226.70.

The WCAB denied reconsideration of the decision and Kopitske petitioned this court for review. We granted the petition to consider whether the penalty should be assessed against VRMA or PD. Because the penalty resulted from unreasonable delay in paying advances from PD, the penalty must be assessed against PD, not VRMA.

DISCUSSION

 Respondents argue that the purpose of section 139.5, subdivision (d)(2), is wage replacement. Therefore, like TD, penalties for delay in paying advances from PD should be assessed only against VRMA supplemented by PDA. Kopitske argues that because the specific class of benefits

---

[1] All undesignated statutory references are to the Labor Code.

from which payment was unreasonably delayed is PD, the penalty should be assessed against PD. We agree with Kopitske.

■ The provisions of workers' compensation law ". . . shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment." (§ 3202.) It is axiomatic that courts must liberally construe the penalty provision of section 5814 to protect injured workers. (*Avalon Bay Foods* v. *Workers' Comp. Appeals Bd.* (1998) 18 Cal.4th 1165, 1173-1174 [77 Cal.Rptr.2d 552, 959 P.2d 1228].)

Section 5814 specifies, in pertinent part, "When payment of compensation has been unreasonably delayed or refused, . . . the full amount of the order, decision or award shall be increased by 10 percent." Section 5814 applies to virtually every type of benefit provided by workers' compensation laws. (§ 3207; *Avalon Bay Foods* v. *Workers' Comp. Appeals Bd.*, *supra*, 18 Cal.4th at p. 1173, fn. 3; *State of California* v. *Workers' Comp. Appeals Bd.* (1996) 44 Cal.App.4th 128, 139-140 [51 Cal.Rptr.2d 606].)

In *Gallamore* v. *Workers' Comp. Appeals Bd.* (1979) 23 Cal.3d 815, 827 [153 Cal.Rptr. 590, 591 P.2d 1242], our Supreme Court held that under section 5814, multiple 10 percent penalties apply to unreasonable delay in making PD payments, in obtaining an unauthorized credit for asserted overpayments of TD and in delaying reimbursement of travel expenses. *Gallamore* concluded that "the penalty [under section 5814] is to be computed by assessing 10 percent of the entire amount ultimately awarded *for the particular class of benefit* which has been unreasonably delayed or withheld." (23 Cal.3d at p. 827, italics added; accord, *Rhiner* v. *Workers' Comp. Appeals Bd.* (1993) 4 Cal.4th 1213, 1219, 1220, 1225, 1227 [18 Cal.Rptr.2d 129, 848 P.2d 244].)

■ In *Avalon Bay Foods* v. *Workers' Comp. Appeals Bd.*, *supra*, 18 Cal.4th at page 1171, our Supreme Court explained that where " '. . . an award is readily severable into the different classes or categories of compensation as defined in the Workers' Compensation Act . . . the penalty is to be assessed against only the amount awarded for the particular benefit of the kind delayed or refused.' " (Quoting *Gallamore* v. *Workers' Comp. Appeals Bd.*, *supra*, 23 Cal.3d at p. 824.) " '. . . Thus, if any part of a specific benefit has been delayed or withheld, the penalty is imposed against the entirety of that benefit.' " (18 Cal.4th at p. 1171, quoting *Gallamore*, *supra*, at p. 827.) In *Avalon Bay Foods*, the court held that medical transportation benefits fall within the same class of compensation as medical treatment benefits. (18 Cal.4th at pp. 1171-1172.)

Furthermore, the penalty is assessed against all amounts due before or after the award for the particular class of benefit, whether or not timely paid, and regardless of the amount involved. (*Rhiner* v. *Workers' Comp. Appeals Bd.*, *supra*, 4 Cal.4th at pp. 1218-1219; *Gallamore* v. *Workers' Comp. Appeals Bd.*, *supra*, 23 Cal.3d 815.)

Respondents argue that it would be unduly harsh to impose the penalty on the full amount of PD when the unreasonably delayed payments constitute a small amount advanced against PD. *Rhiner* rejected this argument stating, "The express language of the statute . . . compels the conclusion . . . that the penalty must be assessed on 'the entire amount ultimately awarded for the particular class of benefit which has been unreasonably delayed or withheld.'" (*Rhiner* v. *Workers' Comp. Appeals Bd.*, *supra*, 4 Cal.4th at p. 1225, citing section 5814 and quoting *Gallamore* v. *Workers' Comp. Appeals Bd.*, *supra*, 23 Cal.3d at p. 827.) "'. . . Thus, if any part of a specific benefit has been delayed or withheld, the penalty is imposed against the entirety of that benefit.'" (4 Cal.4th at p. 1220, quoting *Gallamore*, *supra*, at p. 827; accord, *Avalon Bay Foods* v. *Workers' Comp. Appeals Bd.*, *supra*, 18 Cal.4th at p. 1171.) It is true that in this case the assessment against PD results in a higher penalty, but there are many cases in which VRMA or VRMA plus PDA exceed PD.

In *Rhiner,* the employer unreasonably required the worker to travel about 200 miles to receive medical treatment. The WCAB applied the 10 percent penalty after deducting preaward payments. *Rhiner* annulled the decision, holding that the penalty must be applied to the full amount of the award for the class of compensation at issue, without deduction for timely preaward payments. (*Rhiner* v. *Workers' Comp. Appeals Bd.*, *supra*, 4 Cal.4th at pp. 1215-1217, 1227-1228.)

*Rhiner* acknowledged that a large penalty may result from the employer's unreasonable delay in paying a small amount of benefits to the injured employee. *Rhiner* explained, however, that a monetary amount that is of little consequence to an employer or carrier may be disastrous to an injured worker struggling to obtain treatment and to pay basic household expenses. We are not at liberty to second-guess the policy determination made by the Legislature. (*Rhiner* v. *Workers' Comp. Appeals Bd.*, *supra*, 4 Cal.4th at p. 1226.)

As here, *Rhiner* concerned benefits that apply only to injuries occurring on or after January 1, 1990. The 1990 amendments shortened time limits for compensation payments and added new penalties for delay in benefit pay-ments. (*Rhiner* v. *Workers' Comp. Appeals Bd.*, *supra*, 4 Cal.4th at pp.

1226-1227.) The Legislature however did not amend section 5814. (4 Cal.4th at p. 1227.) Accordingly, *Rhiner* concluded that ". . . the Legislature has indicated its continuing concern with the problem of delay or refusal by employers to timely pay compensation benefits to injured employees." (*Ibid.*)

■ The workers' compensation system provides separate classes of indemnity for temporary and permanent disabilities. (*Edgar* v. *Workers' Comp. Appeals Bd.* (1998) 65 Cal.App.4th 1, 10-11 [76 Cal.Rptr.2d 83]; *Western Growers Ins. Co.* v. *Workers' Comp. Appeals Bd.* (1993) 16 Cal.App.4th 227, 235 [20 Cal.Rptr.2d 26].) A disability cannot be both permanent and temporary at the same time. (*Western Growers Ins. Co.*, *supra*, at p. 235.) For purposes of the issue before us, there are four distinct classes of benefits: TD, VRTD, VRMA and PD.

TD is the immediate incapacity to work due to an industrial injury that is reasonably expected to be cured or materially improved with proper medical treatment. (*Western Growers Ins. Co.* v. *Workers Comp. Appeals Bd.*, *supra*, 16 Cal.App.4th 227, 235; *Chavira* v. *Workers' Comp. Appeals Bd.* (1991) 235 Cal.App.3d 463, 473 [286 Cal.Rptr. 600].) The class of TD serves only as wage replacement during the injured worker's healing period. It is payable at two-thirds of the worker's average weekly earnings. (§ 4653; *Edgar* v. *Workers' Comp. Appeals Bd.*, *supra*, 65 Cal.App.4th at pp. 10-11; *Ritchie* v. *Workers' Comp. Appeals Bd.* (1994) 24 Cal.App.4th 1174, 1179 [29 Cal.Rptr.2d 722]; *Maples* v. *Workers' Comp. Appeals Bd.* (1980) 111 Cal.App.3d 827, 836 [168 Cal.Rptr. 884]; and see 1 Hanna, Cal. Law of Employee Injuries and Workers' Compensation (rev. 2d ed. 1999) § 7.01[1], pp. 7-4-7-5.)

The injured employee may go into VR. (*Edgar* v. *Workers' Comp. Appeals Bd.*, *supra*, 65 Cal.App.4th at p. 11.) ■ The purpose of VR under workers' compensation is to restore an injured employee to suitable employment. (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 232 [110 Cal.Rptr. 144, 514 P.2d 1224]; *Edgar*, *supra*, at p. 11.) It serves to get the disabled worker from " ' "the bed to the job." ' " (*Moyer*, *supra*, at p. 232; *Edgar*, *supra*, at p. 11.)

In the words of section 4635, subdivision (d), " 'Vocational rehabilitation services' means those services required to determine if an employee can reasonably be expected to return to suitable gainful employment and those services reasonably necessary to provide an employee with the opportunity to return to suitable gainful employment. These services may include, but are not limited to, vocational and medical evaluation, counseling, job analysis, job modification assistance, retraining, including on-the-job training or

training for alternative employment, formal training, academic instruction, and job placement assistance."

During the initial period of VR, the worker remains temporarily disabled and the benefits are received from VRTD. (See *Jimenez* v. *Workers' Comp. Appeals Bd.* (1991) 1 Cal.App.4th 61, 64 [1 Cal.Rptr.2d 660]; *Edgar* v. *Workers' Comp. Appeals Bd., supra,* 65 Cal.App.4th at p. 12 [distinguishing TD].) The worker continues to receive two-thirds of his or her average weekly earnings until becoming P&S.

Section 139.5, subdivision (c), states, in pertinent part, "When an employee is determined to be medically eligible and chooses to participate in a vocational rehabilitation program, he or she shall continue to receive temporary disability indemnity payments only until his or her medical condition becomes permanent and stationary and, thereafter, may receive a maintenance allowance."

██ When the employee's condition has reached maximum improvement or it has become stationary for a reasonable period of time, the worker is considered to be P&S. (*Edgar* v. *Workers' Comp. Appeals Bd., supra,* 65 Cal.App.4th at pp. 10-11.) When the employee's condition has become P&S, the worker is considered to have a permanent disability. (*Id.,* at p. 10; *Western Growers Ins. Co.* v. *Workers Comp. Appeals Bd., supra,* 16 Cal.App.4th at p. 235.) "When a disability changes from temporary to permanent, the permanent disability is considered a new and further disability." (*Western Growers Ins. Co., supra,* at p. 235.) Thus, when a worker is deemed P&S, he or she is entitled to PD and TD payments cease. (*Ritchie* v. *Workers' Comp. Appeals Bd., supra,* 24 Cal.App.4th at pp. 1179-1180; *Edgar, supra,* at p. 11.)

██ Effective January 1990, when an eligible, injured worker becomes P&S, the worker may continue in VR even though the worker is permanently disabled and is entitled to receive PD benefits. (§ 139.5, subds. (c) & (d).) The status of a worker who opts to remain in VR after becoming P&S is called VRMA. (§ 139.5.) "Rehabilitation maintenance allowance payments shall begin after the employee's medical condition becomes permanent and stationary . . . ." (§ 139.5, subd. (c); see also *Jimenez* v. *Workers' Comp. Appeals Bd., supra,* 1 Cal.App.4th at p. 64.) The worker no longer receives TD payments. Indeed, section 139.5, subdivision (d)(2), provides, in pertinent part, that "[I]n no event shall temporary disability indemnity and maintenance allowance be payable concurrently." (*Edgar* v. *Workers' Comp. Appeals Bd., supra,* 65 Cal.App.4th at p. 13, fn. 7.)

Under VRMA, the worker receives "additional living expenses necessitated by the vocational rehabilitation services, together with all reasonable

and necessary vocational training, . . . but in no event shall the expenses, counseling fees, training, maintenance allowance, and costs associated with . . . vocational rehabilitation services incurred . . . except temporary disability payments, exceed sixteen thousand dollars ($16,000)." (§ 139.5, subd. (c).)

The worker also receives a maintenance allowance. "The amount of the maintenance allowance due under subdivision (c) shall be two-thirds of the employee's average weekly earnings at the date of injury payable as follows: [¶] (1) The amount the employee would have received as continuing temporary disability indemnity, but not more than two hundred forty-six dollars ($246) a week . . . . [¶] (2) At the employee's option, an additional amount from permanent disability indemnity due or payable, sufficient to provide the employee with a maintenance allowance equal to two-thirds of the employee's average weekly earnings at the date of injury . . . ." (§ 139.5, subd. (d)(1) & (2); *Edgar* v. *Workers' Comp. Appeals Bd.*, *supra*, 65 Cal.App.4th at p. 13.)

Thus, the standard maximum weekly payment for VRMA is only $246. The worker is permitted to "borrow" from PD to receive two-thirds of prior wages if he or she chooses to continue in VR. The additional amounts are advances against the final PD amount the worker is entitled to receive and are not counted against the $16,000 cap for VR benefits. (§ 139.5, subd. (d)(2).) A worker may remain on VRMA for only 52 weeks in the aggregate. (§ 139.5, subd. (c).)

PDA is not counted against the $16,000 payment cap for VR expenses and services. PDA is credited against and subtracted from PD owed. Accordingly, the class of benefits which the carrier unreasonably delayed paying here is PD. (See § 4909.) The PD class of benefits does not change because it is paid in advance. This is true even though the purpose of the advances is to supplement income while the worker is receiving VRMA. Some workers would not be entitled to obtain advances against PD while in VR because their prior earnings were equal to or less than $246 per week.

PD compensates for residual handicap and/or impairment of function after maximum recovery has been attained and also serves "to assist the injured worker in his adjustment in returning to the labor market." (*Maples* v. *Workers' Comp. Appeals Bd.*, *supra*, 111 Cal.App.3d at p. 836; see also *Ritchie* v. *Workers' Comp. Appeals Bd.*, *supra*, 24 Cal.App.4th at pp. 1179-1180.) PD benefits " 'are in addition to any temporary disability benefits that may be paid or owing.' " (*Edgar* v. *Workers' Comp. Appeals Bd.*, *supra*, 65 Cal.App.4th at p. 11.)

*Ritchie* considered whether an injured municipal police officer is entitled to receive VRMA after the effective date of disability retirement from the Public Employees' Retirement System. (*Ritchie* v. *Workers' Comp. Appeals Bd.*, *supra*, 24 Cal.App.4th at pp. 1177-1178.) *Ritchie* held that such individuals are not entitled to VRMA under such circumstances. *Ritchie* reasoned that the Legislature intended that VRMA is a form of TD, and is not a new benefit despite legislative materials stating otherwise. (See *id.*, at p. 1185.) To the extent *Ritchie* may conflict with this opinion, we respectfully disagree.

*Ritchie* acknowledged that the 1994 amendments to section 139.5 "arguably" evidence a view that VRMA and TD "are substantially different." (*Ritchie* v. *Workers' Comp. Appeals Bd.*, *supra*, 24 Cal.App.4th at p. 1185, fn. 9 [pointing out that the 1994 legislation capped payment of VR services at $16,000, limited the time period for which VRMA may be received, and excluded TD payments from the cap].) *Ritchie* explained that VRMA begins when the worker who is enrolled in VR becomes P&S, and that *VRMA is paid in lieu of TD.* (*Id.*, at p. 1182.) *Ritchie* also acknowledged that VRMA payments are set at a lower minimum than TD benefits, "before any allowable supplementation with [PD] benefits." (*Id.*, at p. 1185.) Thus, *Ritchie* differentiated between TD, basic VRMA, and PDA.

■ " ' " 'Wide discretion is vested in the Legislature in making the classification[s] and every presumption is in favor of the validity of the statute; the decision of the Legislature as to what is a sufficient distinction to warrant the classification will not be overthrown by the courts unless it is palpably arbitrary and beyond a rational doubt erroneous.' " ' " (*Ritchie* v. *Workers' Comp. Appeals Bd.*, *supra*, 24 Cal.App.4th at p. 1192, quoting *Saal* v. *Workmen's Comp. Appeals Bd.* (1975) 50 Cal.App.3d 291, 300 [123 Cal.Rptr. 506].)

Our Supreme Court has emphasized what the Legislature has said: to liberally construe benefits in favor of the worker. The Legislature has created distinct classifications for purposes of receipt of various benefits by injured workers, including TD, VRTD, VRMA and PD. (See 1 Hanna, Cal. Law of Employee Injuries and Workers' Compensation, *supra*, § 10.40[6][a], pp. 10-66.1 to 10-66.2; 2 Hanna, Cal. Law of Employee Injuries and Workers' Compensation, *supra*, § 35.11[1], pp. 35-22 to 35-23; *id.*, § 35.11[2][b], pp. 35-25 to 35-26.)

■ We do not view PDA as a hybrid benefit. PDA is simply an advance from and against PD. Accordingly, when the employer or carrier unreasonably delays paying advances on PD, the penalty should be assessed against PD, not against VRMA as "supplemented" by PDA.

The dissent suggests that the majority opinion will encourage employees to ask for PDA in every case in the hope that a late payment will result in a large penalty. We reject this jaundiced appraisal of injured employees. If anything, our opinion ensures that compensation benefits be paid promptly.

The decision of the WCAB to deny reconsideration is annulled. We direct the WCAB to set aside and vacate its ruling and to order the 10 percent penalty payments to be assessed against PD in accordance with this opinion.

The parties are to bear their own costs.

Coffee, J., concurred.

**YEGAN, J.**—I respectfully dissent. I agree with the seasoned and experienced workers' compensation judge, the Honorable Robert A. Ebenstein, whose report on reconsideration was adopted and incorporated unanimously by the Workers' Compensation Appeals Board (Board). The workers' compensation judge and the Board concluded that the 10 percent penalty attached to the vocational rehabilitation maintenance allowance (VRMA) and the permanent disability advances (PDA), but did not attach to the permanent disability (PD) award. The majority opine to the contrary, thereby increasing the penalty from $1,710 to $10,226.70.

"The board's interpretation of statutes involving the workers' compensation laws are 'entitled to significant respect upon judicial review.' [Citations.]" (*Avalon Bay Foods* v. *Workers' Comp. Appeals Bd.* (1998) 18 Cal.4th 1165, 1174 [77 Cal.Rptr.2d 552, 959 P.2d 1228].) The reason for this rule seems obvious. Workers' compensation law is a special field and those who have been selected to administer it on a daily basis have developed an expertise and an insight into how the statutory components fit into the mosaic of this special field. Here, I would give "significant respect" to the Board's interpretation of the statutory scheme. There is no question that this is a first impression case and that a 10 percent penalty should attach pursuant to Labor Code section 5814. But, upon what should the penalty attach?

Because this employee asked for and received PDA, the majority conclude that a late PDA payment results in a 10 percent penalty against all permanent disability benefits. The majority correctly state that the workers' compensation laws, including penalty provisions, are to be liberally construed in favor of the injured worker. (*Kerley* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 223, 227 [93 Cal.Rptr. 192, 481 P.2d 200].) However, this does not mean that we construe the statutory scheme beyond its fair import. Here, the majority provide a windfall to the injured employee and impose a draconian punishment on the employee's carrier.

The Board ruled: "The purpose of permanent disability is to compensate an injured employee for residual handicap and/or impairment of bodily function after recovery from the effects of an industrial injury. . . . By contrast the purpose of VRMA is to assist the applicant in meeting the cost of living while he is unemployed during the rehabilitation period. In this respect it serves the identical purpose of temporary disability, wage replacement. . . . [Labor Code] Section 139.5(d)(2) specifically allows permanent disability advances 'to provide the employee with a maintenance allowance equal to two thirds of the employee's average weekly earnings. . . .' It is thus clear from this plain language of the statute that the purpose of the advances was to provide applicant with wage replacement in the form of increased VRMA, not to award him of her permanent disability while in rehabilitation."

The Board's analysis is rooted in common sense and is in harmony with the letter and spirit of Labor Code section 139.5 subdivision (d)(2). "VRMA provides an interim source of financial support to the employee who is enrolled in rehabilitation training and whose condition is permanent and stationary. As such, it plays the same essential role in the compensation scheme as does VRTD [vocational rehabilitation temporary disability]." (*Ritchie* v. *Workers' Comp. Appeals Bd.* (1994) 24 Cal.App.4th 1174, 1182 [29 Cal.Rptr.2d 722].) VRMA is not the same class of benefits as PD. (*Id.,* at pp. 1179-1180.) The fact that PD benefits may be "borrowed" or "advanced" to supplement the employee's maintenance allowance does not change the underlying nature of the VRMA benefit. The majority treat such an advance as the key to the penalty cash register. Once the hand is in the till, whatever may ultimately be in the till is fair game for penalty. The Board has determined, and I agree, that this is an unwarranted extension. In my view, the majority opinion will result in requests for PDA in every case. The reason is simple: late maintenance allowance payments will result in penalties against the entire permanent disability award. There is every incentive to ask for PDA and no incentive not to ask for PDA.

The petition of respondent Safeco Insurance Company for review by the Supreme Court was denied November 17, 1999. Kennard, J., and Brown, J., were of the opinion that the petition should be granted.